In the Matter of 1616 REMINC LIMITED PARTNERSHIP, Debtor.

COMMONWEALTH LAND TITLE INSURANCE COMPANY, Plaintiff,

v.

1616 REMINC LIMITED PARTNERSHIP, Defendant.

Bankruptcy No. 75–659–A.

United States Bankruptcy Court,
E. D. Virginia,
Alexandria Division.

Sept. 9, 1981.

---

9. See note 2.

10. See Bankruptcy Rule 110.

Richard E. Henning, Pratt, Buonassissi & Henning, P. C., Fairfax, Va., counsel to Commonwealth Land Title Ins. Co.

James A. Newell, Arlington, Va., counsel to the debtor.

## MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

This matter came on for hearing upon the Motion of Commonwealth Land Title Insurance Company ("Commonwealth") for Entry of an Order Directing Disbursement of Escrow Account. 1616 Reminc Limited Partnership ("Reminc"), the defendant herein, opposes disbursement of the escrow

account to Commonwealth. Reminc is a debtor-in-possession in an Arrangement under Chapter XII of the Bankruptcy Act.[1]

An Escrow Agreement was entered into by and between Reminc; Gerald M. O'Donnell, Receiver; 1616 Arlington Associates; Washington Properties, Inc.; American Security Bank, N.W. (successor-in-interest to American Security & Trust Company (as escrow agent)); and Commonwealth on May 18, 1976. Pursuant to this Escrow Agreement, Commonwealth tendered the sum of $150,000.00 ("escrow account") to the escrow agent.

At all times relevant herein, the Escrow Agreement bore the date of May 18, 1976. Testimony had at the hearing indicated that this date was fixed by Theodore B. Gould, General Partner of Reminc, in connection with the confirmation of the Plan of Arrangement in this case.

A hearing was held before the Court on September 16, 1980 wherein the Court heard argument on the proper interpretation of paragraph 4(c) of the Escrow Agreement. This paragraph provides that:

"(c) [I]n the event that the Escrow Account or any portion thereof has not been disbursed for any reason whatsoever, within four (4) years from the date hereof, then the Escrow Agent shall forthwith disburse to CLTIC [Commonwealth] the balance of the Escrow Account, including principal, any and all income and interest accrued thereon."

The sole issue determined by the Court was the date by which Reminc was required to comply with the conditions of the Escrow Agreement.

The Court, in an Order entered on November 14, 1980, found that the Escrow Agreement on its face was entered into on May 18, 1976 by and between the parties described therein. The Court next construed the phrase " 'within four (4) years

---

1. This is to supplement the findings of fact and conclusions of law set forth in the record and in an Order entered by the Court on July 22, 1981.

from the date hereof'" as being without ambiguity as to the intent of the parties. Therefore, the Court found "that as a matter of law, the date referred to in subparagraph (c) is May 18, 1980, said date being four years from May 18, 1976, the date of the Escrow Agreement." Based principally upon this ruling the Court excluded from admission into evidence any parol evidence which sought to vary the date of the Escrow Agreement.

The Court notes that Reminc's entitlement to any part of the escrow funds was contingent upon its meeting certain conditions precedent contained in the Escrow Agreement by May 18, 1980. As set forth therein, these conditions required: (1) the release of record of any mechanic's liens as required in paragraph 3(A)(i); (2) delivery to the Escrow Agent of a certification in a form satisfactory to Commonwealth that certificates of indebtedness issued in this case had been satisfied or subordinated to the deeds of trust as required in paragraph 3(B); and (3) delivery to the Escrow Agent of certifications pursuant to paragraph 4(b) from the lenders, Metropolitan Life Insurance Company and Larwin Mortgage Investors, that their loans were not in default.

It is uncontroverted that there were mechanic's liens of record against the subject property which remained unreleased of record for four years from May 18, 1976. The mechanic's liens in question had been filed by Lenz Plumbing Supply Corporation ($7,473.07—Deed Book 1876 at p. 31) and Davenport Insulation, Incorporated ($2,560.00—Deed Book 1883 at p. 525).

Stephen M. Pratt, Esquire, testified that it was the responsibility of his firm to undertake a title examination of the subject property upon notification by Reminc. Pratt examined the grantor-grantee records of the subject property, as disclosed by the general indices located in the Clerk's Office of the Circuit Court of Arlington County, Virginia for the period ending May 20, 1980, and as of that time the above-described mechanic's liens had not been released of record.

It is also uncontroverted that Reminc failed to provide the certification that certificates of indebtedness authorized by this Court had been extinguished or subordinated within four years from May 18, 1976. Beth Howard, Vice-President and Trust Officer of the Escrow Agent, testified that the Escrow Agent did not receive any such certification on or before May 18, 1980.[2] Nor did Reminc provide the required certifications from Metropolitan Life Insurance Company and Larwin Mortgage Investors that Reminc was not in default as it was required to do within four years of May 18, 1976.

Based upon the foregoing, the Court concluded that Reminc did not comply—within four years from May 18, 1976—with the referenced conditions precedent to its entitlement to any funds as required in the Escrow Agreement. Notwithstanding this finding, Reminc asserted two theories in support of the proposition that the funds in the Escrow Account should be paid over to it. Reminc maintained that to permit the escrow *res* to be returned to Commonwealth would result in the unjust enrichment of the latter, particularly where Reminc had substantially complied with the conditions set forth in the Escrow Agreement.

■ With respect to the doctrine of unjust enrichment, the Supreme Court of Pennsylvania in *Third National Bank & Trust Company of Scranton v. LeHigh Valley Coal Company*, 353 Pa. 185, 44 A.2d 571, 574 (Pa.1945) held that an agreement made by and between parties on a particular subject became:

"[T]he law which they themselves fixed and which determines their rights. . . .

---

**2.** Bernard Auerbach, a former vice-president of Commonwealth testified that Reminc did not, on or before May 18, 1980, furnish to Commonwealth for its review or approval as to form any written certification that certificates of indebtedness and other priority indebtedness authorized by this Court as required by the Escrow Agreement.

Nor, under such circumstances does any question of 'unjust enrichment' arise, for that principle of quasi-contract is not applicable to agreements deliberately entered into by the parties however harsh the provisions of such contracts may seem in the light of subsequent happenings." Thus, absent fraud or mistake, a court will not "undertake to impose the obligation of a quasi contract when the parties have clearly and plainly expressed in writing the actual contract between them." *Shanks v. Wilson,* 86 F.Supp. 789, 794 (S.D.W.Va. 1949). Where, as in the instant case, the relationship between Reminc and Commonwealth is founded on a written agreement, the doctrine of unjust enrichment is not available. Such an agreement, therefore, clearly is not susceptible to judicial revision.

 Nor is the doctrine of substantial performance available to Reminc in the present case. The general, if not uniform rule of law to be applied in the interpretation of escrow agreements is that "[s]trict and full compliance alone can discharge a condition precedent to valid delivery by the escrow holder." 28 Am.Jur.2d, *Escrow,* § 21, p. 31 (1966). It is clear that the sole "question involved is one of performance of the escrow agreement, not of the ability of the parties to perform the agreement, since such ability, without full performance, cannot amount to compliance." *Id.* Moreover, neither the ability to comply nor the accomplishment of the underlying objects of the escrow would avail the defaulting party when strict compliance with the terms of the agreement was not achieved. *Watts v. Mohr,* 86 Cal.App.2d 256, 194 P.2d 758 (Cal. App.1948).

The Court is fully cognizant of Reminc's argument that a finding for Commonwealth may be tantamount to a forfeiture of the disputed funds being held in escrow. Implicit in Reminc's argument is that forfeitures are not favored in the law. Indeed, it is well-established that the law abhors the granting of a foreclosure. However, as heretofore stated, the parties are bound as to those matters which they, by mutual agreement, express in the terms and conditions of a written agreement entered into freely by them. To allow Reminc to receive the funds in the escrow account under a forfeiture theory "would result in effectively nullifying the specific agreement of the parties." *Melfi v. Goodman,* 73 N.M. 320, 388 P.2d 50, 52 (1963).

Accordingly, upon consideration of the foregoing and for the reasons stated in the Order entered by the Court on July 22, 1981, as well as the reasons set forth in the record and herein, the Court concludes that Commonwealth's motion for disbursement of escrow funds be granted.