778 F.2d 183
 18 Fed. R. Evid. Serv. 1344
 1616 REMINC LIMITED PARTNERSHIP; Theodore B. Gould;
Washington Properties, Inc. and 1616 Arlington
Associates, Appellees,
v.
COMMONWEALTH LAND TITLE INS. CO., Appellant.
1616 REMINC LIMITED PARTNERSHIP; Theodore B. Gould;
Washington Properties, Inc. and 1616 Arlington
Associates, Appellants,
v.
COMMONWEALTH LAND TITLE INS. CO., Appellee.
 Nos. 84-1594(L), 84-1623.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 5, 1985.
Decided Nov. 27, 1985.
 
 Richard E. Henning (Stephen J. Annino, Pratt, Buonassissi & Henning, P.C., Fairfax, Va., on brief), for appellant.
 Barry S. Spector (Mark C. Ellenberg, Cadwalader, Wickersham & Taft, Washington, D.C., James A. Newell, Holywell Corp., on brief), for appellees.
 Before ERVIN, CHAPMAN and SNEEDEN, Circuit Judges.
 ERVIN, Circuit Judge:
 
 
 1
 This is an appeal in an action alleging breach of contract. The district court found in favor of plaintiff 1616 Reminc Limited Partnership (hereinafter "Reminc")[1] on its breach of contract claim, and found in favor of defendant Commonwealth Land Title Insurance Company (hereinafter "Commonwealth") on a counterclaim for certain attorney's fees against Reminc. This case is the second legal action to arise from a series of agreements entered into between the parties in which Commonwealth, an insurer of Reminc's property, agreed to pay Reminc $150,000 in exchange for Reminc's obtaining release of mechanic's liens against property insured by Commonwealth. Commonwealth placed $150,000 in an escrow account which would be payable to Reminc if the latter performed its obligation by a certain date. In the first round of litigation, a bankruptcy court ruled that Reminc had not met the conditions of the parties' escrow agreement by the time that agreement expired and consequently Commonwealth was entitled to the $150,000 it had placed in escrow. This court affirmed that decision. Having obtained release of the liens, Reminc then sought $150,000 plus interest allegedly due Reminc under the underlying agreement. Commonwealth argued that this action was barred by res judicata due to the litigation on the escrow agreement. The district court ruled in favor of Reminc on its breach of contract claim and ruled in favor of Commonwealth on a counterclaim for attorney's fees for the defense of certain liens. Both parties now appeal from the portion of the judgment adverse to them. We affirm in part and reverse in part.
 
 I.
 
 2
 Reminc is the owner and mortgagor of the Xerox Building in Arlington, Virginia. Commonwealth is the insurer under title insurance policies running to the mortgage on the property. During the time the Xerox Building was under construction, numerous mechanic's liens totalling $2,706,000 were filed against the property for which Commonwealth was potentially liable.
 
 
 3
 On August 15, 1975, Reminc initiated bankruptcy proceedings. Simultaneously, Reminc filed suit against Commonwealth in the Circuit Court of Arlington County alleging, in part, that Commonwealth had breached an agreement to pay Reminc to induce discharge of the mechanic's liens. In the spring of 1976, Reminc and Commonwealth reached an agreement in settlement of the lawsuit. The agreement was set forth in three documents: an "Agreement," an "Indemnity Agreement" and an "Escrow Agreement." In the Agreement, Reminc promised to indemnify Commonwealth for any loss on the title insurance policy for the Xerox Building, to dismiss a Virginia state court suit against Commonwealth seeking recovery under the title insurance policy, and to have all liens against the Xerox Building extinguished or subordinated to the first and second mortgages held by Metropolitan Life Insurance Company and its investors. In return, Commonwealth promised to place $150,000 in escrow to be paid to Reminc on the condition that Reminc satisfy its obligations under the Agreement within four years. The settlement also provided that each of the three subsidiary agreements was subject to ratification and confirmation by the bankruptcy court.
 
 
 4
 The Indemnity Agreement contained the specific conditions of Reminc's promise to indemnify Commonwealth for losses on the title policy. The Escrow Agreement provided that the $150,000 placed in escrow, plus interest, would be paid to Reminc once three conditions were met: (1) the extinguishment of all valid mechanic's liens; (2) acknowledgement of nondefault by the Xerox Building's mortgagees; and (3) a certification that no outstanding certificates of indebtedness or other priority claims exist superior to the mortgages. It further provided thatin the event that the Escrow Account or any portion thereof has not been disbursed for any reason whatsoever, within four (4) years from the date hereof, then the Escrow Agent shall forthwith disburse to [Commonwealth] the balance of the Escrow Account, including principal, any and all income and interest accrued thereon.
 
 
 5
 (J.A.Ex. 99)[2] (emphasis added).
 
 
 6
 On May 18, 1976, Reminc and Commonwealth signed all three agreements. The agreements were approved by the bankruptcy court on June 3, 1976. Reminc then implemented its plan of remedial construction and extinguishment of the liens which involved both settlements with the claimants and litigation. By May 18, 1980, all but two of the original thirty lien claims were extinguished. These two claims amounted to $10,033.07. Releases of these claims were recorded on June 9, 1980.
 
 
 7
 On May 20, 1980, Commonwealth filed a motion for entry of an order directing disbursement of the escrow funds to it. In the motion, Commonwealth alleged that four years had elapsed from the date on the Escrow Agreement (May 18, 1976), that Reminc had failed to fulfill all conditions precedent, and that Commonwealth was therefore entitled to the escrow funds. Following extinguishment of the final liens, Reminc sought disbursement of the escrow funds to it. The escrow agent refused to disburse the funds to either party without a court order.
 
 
 8
 On July 22, 1981, the bankruptcy court entered an order directing disbursement of the escrow funds to Commonwealth. The court found that the Escrow Agreement had been entered into by the parties on May 18, 1976, and that four years later, on May 18, 1980, two liens had not been extinguished. Consequently, under the terms of the Escrow Agreement, Commonwealth was entitled to the funds. Matter of 1616 Reminc Limited Partnership, 13 B.R. 948, 949-950 (Bankr.E.D.Va.1981), aff'd, 679 F.2d 887 (4th Cir.1982) (unpublished).[3]
 
 
 9
 Reminc then filed this action in federal district court alleging breach of contract by Commonwealth on the underlying agreement concerning cancellation of the mechanic's liens. Commonwealth argued that the suit was barred by res judicata due to the bankruptcy court order. Commonwealth also filed a counterclaim for attorney's fees for expenses it incurred in defending certain mechanic's liens. The case was tried on April 24, 1984 on stipulated facts, with brief oral testimony on the counterclaim. The district court concluded that
 
 
 10
 read as a whole, the three contracts reveal an intended agreement that Reminc would be paid $150,000.00 for its undertaking to defend and secure the release of the liens; that the Escrow Agreement was no more than a security vehicle for the holding of the $150,000.00 pending the completion of Reminc's undertaking; that the bankruptcy court's order releasing the escrow funds to Commonwealth was a determination of no more than that under the strict terms thereof the Escrow Agreement had expired; that neither the Escrow Agreement nor the bankruptcy court order resolves the questions whether the underlying agreement has been performed by Reminc or Reminc is entitled to payment for that performance; that Reminc has performed the intended agreement and is entitled to payment of $150,000.00 plus interest; and that under the terms of the Indemnity Agreement and the circumstances of this case, Commonwealth is entitled to indemnity for the attorney's fees and costs it has incurred.[4]
 
 
 11
 (J.A. 169). The district court awarded Reminc interest on the $150,000 judgment from August 2, 1976, the date upon which it found Reminc's obligation to perform under the contract had accrued. (J.A. 174).
 
 
 12
 Reminc and Commonwealth now appeal from the parts of the judgment adverse to them. Commonwealth argues that the suit is barred by res judicata and collateral estoppel, and that the district court erred in considering parol evidence, in finding an agreement between the parties independent of the Escrow Agreement, and in awarding interest on the judgment. Reminc argues that the district court did not award it the proper rate of interest on the judgment, and that the court erred in finding that Commonwealth was entitled to attorney's fees.
 
 II.
 
 13
 In applying the doctrine of res judicata, three questions must be considered: (1) whether the issue decided in the prior case was identical to the question presented in this action; (2) whether the prior action reached a final judgment on the merits; and (3) whether the party against whom the plea is asserted was a party or was in privity with a party to the prior action. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 323-24, 91 S.Ct. 1434, 1439-40, 28 L.Ed.2d 788 (1971); Concordia v. Bendekovic, 693 F.2d 1073, 1076 (11th Cir.1982); Nash County Board of Education v. Biltmore Co., 640 F.2d 484, 486 (4th Cir.1981).
 
 
 14
 The issue before the bankruptcy court in In re 1616 Reminc Limited Partnership concerned only one aspect of the series of agreements between the parties. That court heard argument on the narrow question of "the proper interpretation of paragraph 4(c) of the Escrow Agreement," which concerned time limitations on compliance with that agreement. 13 B.R. at 949. Further, "[t]he sole issue determined by the court was the date by which Reminc was required to comply with the conditions of the Escrow Agreement." Id. While the Escrow Agreement is a part of the broader contractual relationship between the parties, the question of compliance with the time limitations in that agreement is a discrete question which is not dispositive of other liabilities that may exist between the parties. Consequently, this case and the one before the bankruptcy court are not "identical" for the purpose of res judicata.
 
 
 15
 Although res judicata does not apply, collateral estoppel precludes relitigation of those matters actually considered and decided by the bankruptcy court. See Commissioner v. Sunnen, 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). Therefore, Reminc may not relitigate the question of whether the conditions of the Escrow Agreement were fulfilled. This case does not attempt to relitigate that question, but rather to determine liability on the underlying agreement. Accordingly, this action is not barred by collateral estoppel.
 
 III.
 
 16
 Commonwealth argues that the district court improperly considered parol evidence in interpreting the contract between the parties. Parol evidence is inadmissible to vary or explain the terms of an unambiguous contract. Globe Iron Construction Co. v. First National Bank of Boston, 205 Va. 841, 140 S.E.2d 629, 633 (1965). However, it may be used so that "[a]mbiguities may be cleared away and weasel words explained." Title Insurance Co. v. Howell, 158 Va. 713, 164 S.E. 387, 389 (1932).
 
 
 17
 The contract in this case is ambiguous. The final paragraph states that if certain actions are undertaken by Reminc,
 
 
 18
 [Commonwealth] will deposit the sum of $150,000.00, into an escrow account established at and held by American Security & Trust Company, a District of Columbia corporation, pursuant to an escrow agreement, a copy of which is attached hereto, marked as Exhibit "C", and expressly made a part hereof.
 
 
 19
 (J.A.Ex. 19). In a letter from Stephen M. Pratt, counsel for Commonwealth, which was expressly incorporated as part of the Agreement (J.A.Ex. 18), Pratt states that if certain conditions are met, Commonwealth "will advance up to the sum of $200,000.00." (J.A.Ex. 22). Some of the conditions outlined in the letter included conditions later contained in the Escrow Agreement such as the extinguishment of mechanic's liens. Two ambiguities appear. First, the Agreement standing by itself is ambiguous because it could be read as contemplating the establishment of an escrow account as Commonwealth's only obligation to Reminc. However, the nature of an escrow agreement is that it acts as security for an independent obligation. 1A Corbin on Contracts Sec. 249 at 418 (1963). Consequently, the fact that payment is contemplated through an escrow agreement implies that the duty to pay is independent of the escrow agreement and that the escrow agreement simply secures that underlying obligation. From the terms of the Agreement, the substance of the underlying obligation in this case is unclear. The second ambiguity arises from the Pratt letter. The language that up to $200,000 will be advanced conflicts with an interpretation that only the Escrow Agreement, and not necessarily actual payment, was contemplated. Because of these ambiguities, the district court did not err in considering parol evidence in interpreting the Agreement.[5]
 
 IV.
 
 20
 Considering both the language of the contract and the previous correspondence between the parties, the district court found that Commonwealth's duty to pay Reminc under the Agreement did not expire with the Escrow Agreement. Prior to signing the Agreement, Commonwealth sent Reminc two letters which clarify the intent of the parties. A July 28, 1975 letter began, "This will confirm the agreement of Commonwealth Land Title Insurance Company ... to pay the sum of $200,000 in satisfaction of the claims of all mechanic's lien and potential unfiled lien claimants...." (J.A.Ex. 5). The July 28 offer was subsequently withdrawn, and on July 30, 1975, Commonwealth wrote Reminc a letter which stated in part: "This letter will confirm Commonwealth['s] ... present offer to pay the sum of $100,000.00 in satisfaction of all claims for mechanic's liens and potential unfiled liens...." (J.A.Ex. 7). This correspondence clarifies the fact that Commonwealth anticipated that its obligation under the Agreement was a requirement to actually pay Reminc upon Reminc's fulfillment of its obligations.
 
 
 21
 As the bankruptcy court ruled, Reminc forfeited its right to the proceeds of the escrow account when it failed to extinguish all mechanic's liens by the date the Escrow Agreement expired. The remaining liens were released on June 9, 1980, within one month after the Escrow Agreement expired. At that point Reminc had fully performed its obligations under the underlying Agreement, and Commonwealth was obliged to pay Reminc.
 
 
 22
 Commonwealth argues that such a construction of the contract effectively nullifies the Escrow Agreement. However, as the district court noted, the function of the Escrow Agreement was "to secure the ready availability of payment, from Reminc's point of view, and to insure that, from Commonwealth's point of view, the funds were not put in the hands of a potentially bankrupt debtor prior to release of the liens. The arrangement also undoubtedly made the settlement more attractive for the necessary bankruptcy court approval." (J.A. 172).
 
 
 23
 The district court's findings (1) that the Agreement contemplated an obligation on Commonwealth's part to pay Reminc independent of the Escrow Agreement, and (2) that Reminc fulfilled its part of the bargain when it extinguished the mechanic's liens, are not clearly erroneous. See Anderson v. City of Bessemer City, --- U.S. ----, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (findings of fact based on documentary evidence must be upheld if not clearly erroneous). Therefore, the district court properly found that Commonwealth breached the contract when it failed to pay Reminc after Reminc performed its contractual obligations. The judgment against Commonwealth on the merits is accordingly affirmed.
 
 V.
 
 24
 Both parties challenge the way the district court calculated interest on the judgment. The district court awarded simple interest from August 2, 1976, finding that "[w]hile Reminc did not fully perform until June 9, 1980, its obligation to perform, for which it was entitled to payment, accrued on August 2, 1976." (J.A. 174).
 
 A.
 
 25
 Reminc claims that the rate of interest awarded is improper. Reminc argues that it is entitled to all interest actually earned by the funds in the escrow account, as the parties contemplated that Reminc could direct the investment of the funds in that account. This argument is beside the point. Reminc forfeited its right to the funds in the escrow account by failing to perform on time. As a result, it cannot look to the agreement governing the escrow funds as determining its right to interest on non-escrow funds.
 
 B.
 
 26
 Commonwealth argues that interest should be calculated from the date Reminc completed performance, not from the date the final agreements between the parties were signed. When a breach of contract consists of a failure to pay a definite sum of money, interest is payable as part of damages from the time the amount was due. Burruss v. Baldwin, 199 Va. 883, 103 S.E.2d 249, 252 (1958); Restatement (Second) of Contracts Sec. 354a (1981). Under the agreement between the parties, Commonwealth was obligated to pay Reminc $150,000 once Reminc had extinguished all the mechanic's liens against the Xerox Building. Reminc completed performance of its obligations on June 9, 1980. Consequently, Commonwealth's obligation to pay accrued on that date. Because it failed to pay Reminc on that date and thereby breached the agreement, Commonwealth is liable for interest from June 9, 1980. The district court erred in assessing interest from an earlier date.
 
 VI.
 
 27
 Reminc claims that the district court erred in granting Commonwealth attorney's fees incurred in Commonwealth's defense of certain mechanic's liens. The Indemnity Agreement between the parties provided that
 
 
 28
 Notwithstanding the performance of the parties of the first and third parts[6] under the terms of this Indemnity Agreement, parties of the first and third part agree and hereby ratify any action, cost or expense which [Commonwealth] may undertake or incur in connection with its obligations under its binders, commitments or policies of title insurance with respect to any and all liens, claims or actions indemnified against hereunder, and the parties of the first and third parts expressly agree to reimburse and repay [Commonwealth] promptly the full and total amounts of any costs and expenses incurred by it in connection therewith immediately upon demand thereof.
 
 
 29
 (J.A.Ex. 26). The district court found that Commonwealth became dissatisfied with Reminc's defense of certain liens and voluntarily undertook to assist Reminc with the legal work. The court found that such "volunteering was contemplated by the agreement." (J.A. 175). The district court's reading of the agreement is correct, as the document provides for reimbursement of costs incurred by Commonwealth "[n]otwithstanding the performance of the parties." Therefore the award of attorney's fees to Commonwealth on its counterclaim was proper and is affirmed.
 
 
 30
 Accordingly, the judgment of the district court is affirmed in part and reversed in part. The case is remanded for recalculation of the award of interest on the judgment.
 
 
 31
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 "Reminc" refers to all plaintiffs/appellants collectively
 
 
 [2]
 "J.A.Ex." refers to the Joint Appendix, Exhibits Volume
 
 
 [3]
 The bankruptcy court refused to consider parol evidence offered by Reminc which Reminc argued established that the Escrow Agreement was executed at a later date. 13 B.R. at 950. The bankruptcy court's order was affirmed by the district court and by this court in unpublished opinions. 679 F.2d at 887
 
 
 [4]
 Alternatively, the district court found that Reminc was entitled to prevail because it had substantially performed its obligations under the contract
 
 
 [5]
 Commonwealth's alternative arguments regarding the admissibility of the parol evidence are meritless. Commonwealth claims that the evidence was irrelevant and was inadmissible as an offer of compromise. The evidence is clearly relevant under Fed.R.Evid. 401. The documents are not inadmissible as offers of compromise because they are not offered to prove liability on the claims extinguished by the settlement. Fed.R.Evid. 408
 
 
 [6]
 The party of the first part is Reminc. The parties of the third part are appellants 1616 Arlington Associates, Theodore B. Gould and Washington Properties, Inc