**Willie B. KILGORE, Plaintiff,**

v.

**Katherine Jones McCLELLAND, Faye Owens and Charles Herman Stallard, Defendants.**

**Doris McCONNELL, Plaintiff,**

v.

**Roger ADAMS, Evelyn Bacon, and Judy Carroll, Defendants.**

Civ. A. No. 83–0090–B.

United States District Court, W.D. Virginia, Big Stone Gap Division.

Dec. 7, 1985.

As Corrected June 6, 1986.

---

Gary S. Bradshaw, Gate City, Va., Joseph E. Wolfe, Norton, Va., Wm. H. Hurd,

Bryand, Hurd & Porter, Chesterfield, Va., for plaintiffs.

Henry S. Stout, Jr., and Florence Powell, Mullins, Winston, Stout & Thomason, Norton, Va., for Adams, Bacon and Lee County.

C. Dean Foster, Jr., Gate City, Va., for Scott County.

James P. Jones, Bristol, Va., Judy Carroll Williams, Pennington Gap, Va., for Duncan, Cheek, McClelland and Owens.

## MEMORANDUM OPINION

KISER, District Judge.

Until April 1, 1983, the Plaintiffs, Doris McConnell and Willie Kilgore, were the general registrars of Lee and Scott Counties, respectively. In early March of 1983, as the expiration date of both Plaintiffs' terms approached, it became necessary that they be reappointed by the electoral boards of their respective counties in order to continue in office.[1] Neither Plaintiff was reappointed.

1. General registrars are appointed for four-year terms. The electoral board for the county is the appointing authority. *See Va. Code* §§ 24.1–43 and 24.1–44.

2. The statute, *Va. Code* § 24.1–29, provides in applicable part:
   There shall be in each county and city an electoral board, composed of three members, who shall be appointed by a majority of the circuit judges of the judicial circuit for such county or city. If a majority of such judges cannot agree, the senior judge shall make such appointment. Any vacancy occurring in the boards shall be filled by the same authority for the unexpired term. The clerk of the circuit court shall send to the State Board of Elections a copy of each order making an appointment to an electoral board. In the appointment of the electoral board, representation shall be given to each of the two political parties having the highest and next highest number of votes in the Commonwealth for Governor at the last preceding gubernatorial election. A majority of the electoral board shall be from the political party which cast the highest number of votes in the Commonwealth for Governor at the last preceding gubernatorial election....

In January of 1982, a Democrat had replaced a Republican as governor of Virginia and with that change, the political composition of the electoral board of each county also changed from a Republican majority to a Democratic majority (i.e., one Republican and two Democrats). The change was mandated by statute.[2] The Plaintiffs had been appointed under a Republican governor and were Republicans. They were not reappointed and were replaced as general registrars by two Democrats.

On March 30, 1983, the Plaintiffs filed the present case alleging that the Democratic majority on the boards had failed to reappoint them because of their political affiliations. Plaintiffs contended that the boards' actions violated their First and Fourteenth Amendment rights under the Constitution.[3] The claims of the Plaintiffs were separated for trial and were presented to two separate juries. Both juries found that the sole motivation of the Defendants was political. The Kilgore jury awarded $76,348.50, and the McConnell jury awarded $79,399.89 in damages.[4] Subsequent to the trials, various motions were filed, and these post-verdict motions n.o.v.

3. Defendants Stallard and Carroll were Republican members of the electoral boards of Lee and Scott County and were named as parties only for the purpose of injunctive relief.

4. The questions posed to the jury followed the Fourth Circuit model as set forth in *Jones v. Dodson,* 727 F.2d 1329 (4th Cir.1984). The jury in each case was asked to decide whether the electoral boards' failure to reappoint Plaintiffs was solely for political reasons, solely for nonpolitical reasons, or a combination of both, i.e., mixed motives. The Kilgore jury selected the following response on the verdict form:
   The Defendants, McClelland, [sic] and Owens, failed to re-appoint Willie Kilgore to the position of General Registrar of Scott County solely because of her political party affiliation (Republican).
   The McConnell jury was given the same options on the verdict form submitted to it and reached the following identical conclusion to that of the Kilgore jury:
   The Defendants, Bacon and Adams, failed to re-appoint Plaintiff McConnell to the position of General Registrar of Lee County solely because of her political party affiliation (Republican).

of the Defendants and motions for injunctive relief of the Plaintiffs are now before me.[5]

The cases of *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), are the Supreme Court's definitive decisions upon political firings. In *Elrod,* the Supreme Court held that the discharge of a deputy sheriff in the City of Chicago because of his political affiliations violated his First and Fourteenth Amendment rights. In so holding, however, the Court carved out an exception to the rule against politically motivated hirings and firings. It said that when the position was a confidential or policy-making one, then political considerations were permissible. Subsequently, the Court abandoned that exception and delineated a more narrow one. In *Branti,* the Court held that the only permissible reason for political affiliation to be a criterion for the hiring or firing of a person in a public job is that the performance of the job itself requires affiliation with a particular political party. The Court said:

> In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

*Id.* 445 U.S. at 518, 100 S.Ct. at 1294. It is through this narrow window that the Defendants seek to escape liability in this case.

The argument of the Defendants and the Attorney General as *amicus curiae* is that political affiliation is a requirement of the job of general registrar of the county. They go to great pains to point out that the electoral process encompasses a grand plan under which the control of the election machinery shall be in the hands of the

party of the incumbent governor. In support of this, they point out that the Secretary of the State Board of Elections changes and that the membership of the county electoral boards changes with the shift of political power. It is argued, therefore, that for the system to work in harmony, the general registrar of the county must also change. The weakness of this argument is that it does not square with the testimony in the case. Virtually all of the witnesses who testified on the matter, including Susan Fitz-Hugh, Secretary of the State Board of Elections, responded in the negative when asked whether affiliation with a particular party was required in order that a general registrar effectively perform his or her duties. These witnesses indicated that a Republican could do the job as well as a Democrat and vice versa.

█ The job of general registrar does not fit within the exception articulated in *Branti;* therefore, the failure to reappoint the Plaintiffs because of their political affiliations was a violation of their First and Fourteenth Amendment rights.

### *Res Judicata Defense*

On March 1, 1983, the outgoing electoral boards of Lee and Scott Counties, which were dominated by Republicans, undertook to reappoint McConnell and Kilgore to their respective positions. Three days thereafter, the incoming electoral boards for these counties, which were dominated by Democrats, appointed Democrats as general registrars. The actions of the outgoing and the incoming boards raised the issue of who had the power to make appointments to the office of general registrar. To resolve this dilemma, the Chairman, Earl W. Davis, the Vice Chairman, A. George Cook, III, and the Secretary, Susan Fitz-Hugh, of the State Board of Elections filed declaratory judgment actions pursuant to *Va. Code* § 8.01–184, *et seq.,* in the circuit

---

**5.** Defendants in the Lee County matter have also raised the issue of the Court's failure to grant their mistrial motion during the course of the testimony of Patsy Burchett, the former assistant registrar under McConnell. This motion was ruled upon in open court and for the reasons stated into the record at the time, the mistrial motion was not granted. The Court does not need to address the issue again.

courts of Lee and Scott Counties.[6] McConnell was named as the Defendant in the Lee County suit, and Kilgore was named as the Defendant in the Scott County suit. None of the Defendants in the present suit was a party to the state suits.

The identical issue, whether the power of appointment rested with the outgoing board or with the incoming board, was litigated before both circuits. These courts resolved the dispute in favor of the incoming boards and held that their appointment of the new general registrars was a proper exercise of power. The First and Fourteenth Amendment issues, which are raised in the current federal suit, were not litigated nor decided in the state court actions. Yet the Defendants here insist that McConnell and Kilgore should be barred by the doctrine of *res judicata* (claim preclusion) from maintaining their federal action. I disagree.

The Defendants have failed to make the proper distinction between *res judicata* (claim preclusion) and collateral estoppel (issue preclusion). The distinction is very clearly pointed out in the United States Supreme Court case of *Haring v. Prosise*, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983). There, the Court said:

> Like the federal courts, the courts of Virginia apply different rules of preclusion to matters arising in a suit between the same parties and based upon the same causes of action as those involved in the previous proceeding. Under the doctrine of res judicata, 'the judgment in the former [action] is conclusive of the latter, not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined, within the issues as they were made or tendered by the pleadings, or as incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered.' *Eason v. Eason*, 204

Va. [347], at 350, 131 S.E.2d [280] at 282, quoting *Kemp v. Miller*, 166 Va. [661], at 674, 186 S.E. [99], at 103–104. This doctrine does not apply, however, to a later action between different parties or to a later action between the same parties on a different claim or demand. *Ibid.*

*Id.* 462 U.S. at 315 n. 9, 103 S.Ct. at 2374 n. 9.

■ Since the state court action was not an action between the present parties and did not involve the same issues, it is clear that the doctrine of *res judicata* would not apply. The Lee County Defendants rely upon the decision of *Ferebee v. Hungate*, 192 Va. 32, 63 S.E.2d 761 (1951), as supporting their plea of *res judicata*. Not only does it fail to support their position, it is authority in opposition thereto. In *Ferebee*, the Virginia Supreme Court clearly delineated the requirements that must be met to sustain a plea of *res judicata*, i.e., (1) identity of parties to the action; (2) identity of issues; and (3) mutual estoppel. More recently, the United States Court of Appeals for the Fourth Circuit in *1616 Reminc Limited Partnership, et al v. Commonwealth Land Title Ins. Co.*, 778 F.2d 183 (4th Cir.1985), affirmed a Virginia federal district court's rejection of a *res judicata* argument. A bankruptcy court had heard argument on the narrow issue of the proper interpretation of a paragraph of an escrow agreement entered into by the parties to the *Reminc* case. Nevertheless, the Fourth Circuit held that because the bankruptcy court had considered only one aspect of a series of agreements effecting a broad contractual relationship, the district court and bankruptcy cases were not identical for *res judicata* purposes. The circuit court did note, however, that collateral estoppel principles would preclude relitigation of issues already decided in the bankruptcy proceeding.

Even if we treat the Defendants' preclusion defense as that of collateral estoppel (issue preclusion), the Defendants fare no

---

**6.** The suits were filed on March 31, 1983, one day after the Plaintiffs had filed this suit in federal court.

better. In *Prosise, supra,* the Supreme Court examined the rules of collateral estoppel that would be applied in Virginia, and in so doing determined that before the doctrine would apply, the court must find that in the prior litigation the issues which are to be precluded or collaterally estopped must have been actually litigated. The Court stated:

> The courts of Virginia have long recognized that a valid final " 'judgment rendered upon one cause of action' " may bar a party to that action from later litigating " 'matters arising in a suit upon a different cause of action.' " *Eason v. Eason,* 204 Va. 347, 350, 131 S.E.2d 280, 282 (1963), quoting *Kemp v. Miller,* 166 Va. 661, 674–675, 186 S.E. 99, 104 (1936). [footnote omitted]. However, "the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding of verdict was rendered." *Ibid.* Unless an issue was actually litigated and determined in the former judicial proceeding, Virginia law will not treat it as final. See, e.g., *Luke Construction Co. v. Simpkins,* 223 Va. 387, 291 S.E.2d 204 (1982); *Eason v. Eason, supra.* Compare *Brown v. Felsen,* 442 U.S. 127, 139, n. 10 [99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767] (1979). Furthermore, collateral estoppel precludes the litigation of only those issues necessary to support the judgment entered in the first action. As the Virginia Supreme Court stated in *Petrus v. Robbins,* 196 Va. 322, 330, 83 S.E.2d 408, 412 (1954), "[t]o render the judgment conclusive, it must appear by the record of the prior suit that the particular matter sought to be concluded was necessarily tried or determined,— that is, that the verdict could not have been rendered without deciding that matter." Cf. *Block v. Commissioners,* 99 U.S. 686, 693 (1879); *Segal v. American Tel. & Tel. Co.,* 606 F.2d 842, 845, n. 2 (CA9 1979).

462 U.S. at 314–15, 103 S.Ct. at 2373–74.

■ The issues of constitutional violations which are raised in the present litigation were neither framed by the pleadings in the state court nor were they litigated there. The state actions decided only the issue of which board had the power to make appointments of the general registrar pursuant to the statutes of Virginia covering those matters. Plaintiffs would be estopped from resurrecting this issue in the present action. They did not, however, attempt to relitigate the matter. Under the circumstances before us, any plea of collateral estoppel (issue preclusion) must, therefore, fail.

### Qualified Immunity

■ Defendants, who were sued in their individual capacities as well as in their official capacities as electoral board members, have raised a qualified immunity defense. The defense, if successfully made out, will insulate government officials sued in their individual capacities from liability for money damages. In *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975), the Supreme Court stated a subjective test for the defense and, in the context of school disciplinary actions, held as follows:

> [A] school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student. That is not to say that school board members are "charged with predicting the future course of constitutional law." *Pierson v. Ray,* 386 U.S. [547], at 557 [87 S.Ct. 1213, 1219, 18 L.Ed.2d 288]. A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith.

Seven years after the *Wood* decision, in the case of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court moved away from subjective considerations and established an objective test for determining whether an official sued in his individual capacity was shielded from money damages liability by qualified immunity. As enunciated by the *Harlow* Court, the standard required that the conduct at issue did "not violate clearly established statutory or constitutional rights *of which a reasonable person would have known.*" *Id.* 457 U.S. at 818, 102 S.Ct. at 2738 [emphasis supplied]. The Court further noted that generally the defense should fail when the law was clearly established "since a reasonably competent public official should know the law governing his conduct." *Id.* at 819, 102 S.Ct. at 2738. In the more recent case of *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), the Court noted that "[e]ven defendants who violate constitutional rights enjoy qualified immunity ... unless it is further demonstrated that their conduct was unreasonable under the applicable standard." 104 S.Ct. at 3018, 82 L.Ed.2d at 147. The Court further stated that the defense may be overcome only when a plaintiff shows that the constitutional or statutory rights at issue "were clearly established at the time of the conduct at issue." *Id.* 104 S.Ct. at 3021, 82 L.Ed.2d at 151.

In the present matter, the Supreme Court's decisions in *Elrod* and *Branti* predated Defendants' failure to reappoint Plaintiffs and thus the law regarding politically motivated hirings and firings was clearly established. The electoral boards that deprived Plaintiffs of their jobs met on March 4, 1983. The *Branti* case was decided on March 31, 1980. The individuals on the electoral boards who voted to replace Plaintiffs with Democrats as general registrars failed at trial to demonstrate that political party affiliation was relevant to effective job performance. Because Plaintiffs' First and Fourteenth Amendment rights at issue in this case were clearly established and had been for several years, Defendants, as reasonably competent public officials, should have known the law applicable to their powers of appointment. Therefore, I find that Defendants have failed to make out a qualified immunity defense.

### Damages

Two issues have been raised with regard to the money damages awarded by the juries. The named Defendants challenge the amount as being excessive, and the *amicus curiae* for the counties of Lee and Scott argue that the counties should not be held liable for damages awarded against the named Defendants.

■ The amount of damages is well within the bounds of the evidence. Basically, the awards are for the amount of salary the Plaintiffs would have received in their jobs for another four year term had they not been unlawfully discharged. This is entirely appropriate under the law and the evidence. Therefore, the motion based on this ground will be DENIED.

Because the Defendants were sued in their official capacities, the Court must determine under the decision of *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), whether the counties and/or the State of Virginia are also liable for the money damages awarded against the named Defendants. This requires the resolution of two basic questions. First, were the Defendants acting in their official capacity so as to impose liability under *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), and if so, did their employer have ample notice as required by *Brandon?* Second, were the named Defendants officials of their respective counties or were they state officials? As to the second issue, a declaratory judgment action entitled *Katherine McClelland and Faye Owens v. Republic Insurance Company and The Compass Insurance Company,* Civil Action No. 83–0223, is presently pending in the Court.

Counsel for Scott County has moved the Court to abstain from deciding the issue of the county's liability until the declaratory judgment action can be heard. I feel it would be unfair to subject the Plaintiffs to such a delay. To resolve the issue of the liability of Lee County and Scott County, the court will set this issue for hearing and will permit all interested parties to participate in the hearing as well as to submit briefs in support of their respective positions prior to the hearing. Parties to the declaratory judgment action who are not already parties to this suit as well as the counties of Lee and Scott will be included.

### Plaintiffs' Motion for Injunctive Relief

■ The Plaintiffs are entitled to injunctive relief to restore them to the positions of general registrar of their respective counties, but I must take into account the present occupants of the positions so as not to impose an undue hardship upon them. The evidence in the related case of *Burchett v. Cheek and County of Lee*, Civil Action No. 85–0065, revealed that W.R. Hines, the present general registrar of Lee County, worked for a few months in 1983 as an unpaid assistant and in the summer of 1985 took the job of registrar on an interim basis to replace Phillip Cheek, who had resigned from the position for other employment. It appears to me, therefore, that it would work no undue hardship upon Mr. Hines to surrender the job in the very near future. The most logical time for the change to take place would be April 1, 1986, which would leave one full year remaining on the term. I will, therefore, enter an injunction removing Mr. Hines from the position as of that date and requiring the electoral board in Lee County to fill the vacancy with Plaintiff McConnell. As the money damage award to Mrs. McConnell was in part to compensate her for the entire four-year term for which she was not reappointed, it will be reduced by any amounts of compensation she receives in her work as general registrar from April 1, 1986, to April 1, 1987.

■ The Scott County position of general registrar presents a more difficult problem. That office is presently occupied by Glenda Duncan. There is no evidence that she had any complicity in the failure of the electoral board of Scott County to reappoint Plaintiff Kilgore, nor is there any evidence that Duncan took the job other than in good faith. Her appointment was for four years, and it would work an undue hardship upon her to require her to cut her term short. Therefore, I will permit her to finish out her term if she so chooses. At the expiration of her term or should the office become vacant prior to the expiration of her term, I enjoin the board to reappoint Mrs. Kilgore to that office. Should Mrs. Kilgore assume office before the expiration of the present term, her money damage award will likewise be reduced by the amount of salary she receives to April 1, 1987, the end of the term.

### Attorneys' Fees

Plaintiffs' attorneys have filed motions for attorneys' fees. The fee award issue is a collateral matter and cannot be ascertained until the case is completed in this Court. Consequently, the matter of attorneys' fees shall be deferred until all other issues have been resolved.

### ORDER

In accordance with the Memorandum Opinion filed on this date, it is ORDERED that:

1. Defendants' post-trial motions are DENIED.

2. Plaintiffs' motions for injunctive relief are GRANTED to the following extent:

a. Lee County: The Defendant Electoral Board is hereby enjoined to terminate the present general registrar, W.R. Hines, as of the close of business on March 31, 1986, and to appoint Plaintiff McConnell as general registrar effective April 1, 1986. Plaintiff McConnell's money damage award in this lawsuit shall be reduced by an amount which corresponds to compensation she receives as general registrar between April 1, 1986 and April 1, 1987.

b. Scott County: The present general registrar, Glenda Duncan, shall be permitted to serve her full term or as much of it as she chooses. The Defendant Electoral Board is enjoined to appoint Plaintiff Kilgore to resume her duties on April 1, 1987, or when Duncan leaves office, whichever is earlier. Any damages awarded to Kilgore in this lawsuit shall be reduced by an amount which corresponds to the compensation she receives if she becomes general registrar prior to April 1, 1987.

3. A hearing will be set to resolve as expeditiously as possible the issue of the liability of Lee and Scott counties for damages awarded in this case.

4. Decision on Plaintiffs' motion for attorneys' fees is deferred until all other issues in this case have been resolved.