850 F.2d 690
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
STEEL LIMITED PARTNERSHIP, Plaintiff-Appellee,
v.
CALDOR, INC., Defendant-Appellant.
 No. 88-1511.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 5, 1988.
Decided: June 23, 1988.
 
 Martin E. Karlinsky (Robert P. Stein, Scheffler Karlinsky & Stein; Alexander H. Slaughter, Charles Wm. McIntyre, Jr., McGuire Woods Battle & Boothe; Judson W. Calkins, Mary G. Horgan, Office of Legal Counsel, The May Department Stores Company, on brief), for appellant.
 Andrew H. Marks (Paul W. Kalish, Zachary D. Fasman, Crowell & Moring; Robert A. Greenbaum, on brief), for appellee.
 Before WILKINSON, Circuit Judge, BUTZNER, Senior Circuit Judge, and EUGENE A. GORDON, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 In this dispute over the assignability of a shopping center lease, tenant Caldor, Inc. ("Caldor"), appeals the district court's ruling in favor of landlord Steel Limited Partnership ("Steel"). The district court determined that the written lease was ambiguous regarding whether Caldor agreed to unassignably operate a retail department store for the first 5 years of the 20 year lease. The district court, in turn, looked outside the language of the lease to discern the parties' intent, ultimately holding that the Caldor in fact agreed not to assign the lease for the 5 year period. Caldor appealed to this court contending that the language of the written lease plainly allows Caldor to assign the lease at any time, and that the admission of the extrinsic evidence violated the parole evidence rule. Inasmuch as the assignment provision of the lease is expressly "subject to" the provision requiring a 5 year continuous use obligation, it is plausible to interpret the lease as requiring Caldor to unassignably operate a retail department store for 5 years. We therefore uphold the district court's admission of extrinsic evidence to discern the parties' actual intent.
 
 I.
 
 2
 On May 30, 1986, Caldor and Steel signed a 20 year written lease. Caldor agreed to become the anchor tenant at the Sterling Plaza Shopping Center in Sterling, Virginia, a suburb of Washington, D.C. In return, Steel agreed to construct a store to Caldor's specifications. Under Article 8(B) of the lease, the parties agreed that "Tenant" would continuously operate a retail department store for at least 5 years:
 
 
 3
 Tenant covenants and agrees that it will initially open on or about the term commencement date and continuously operate the entire demised premises as retail department store for a minimum of five (5) years thereafter.
 
 
 4
 Under Article 17(C) of the lease, the parties made the assignability of the lease "subject to" Article 8:
 
 
 5
 Subject to the restrictions on use of the demised premises as set forth in Article 8 hereof ... Tenant without Landlord's consent may make an assignment of the Lease....
 
 
 6
 Sometime after the execution of the lease, May Department Stores Company acquired Caldor and, in turn, directed Caldor to withdraw from the Washington, D.C. area. Caldor then advised Steel of its intention to assign the Sterling Plaza lease to another department store.
 
 
 7
 On June 2, 1987, Steel commenced the present action seeking declaratory relief. The district court determined that the lease was ambiguous on the matter of assignability during the initial five years of the lease and that, accordingly, extrinsic evidence could be admitted to discern the parties' actual intent. After reviewing the extrinsic evidence[1], the district court concluded that Caldor had in fact agreed to operate a Caldor retail department store for at least five years. On appeal, the dispositive issue is whether the trial court's admission of extrinsic evidence violated the parole evidence rule. The resolution of this issue turns on whether the provisions of the lease, when read together, plainly allow Caldor to assign the lease during the first 5 years, as Caldor contends, or whether the lease provisions are ambiguous on this matter, as Steel contends.
 
 II.
 
 8
 Under the parole evidence rule[2], extrinsic evidence is not admissible to contradict or explain the plain meaning of an executed and comprehensive written contract. Extrinsic evidence is admissible, however, to discern the parties' intent when the contract is ambiguous. 1616 Reminc Ltd. Partnership v. Commonwealth Land Title Ins. Co., 778 F.2d 183, 187-88 (4th Cir.1985). "A particularly frequent cause of ambiguity in contracts is the use of inconsistent or conflicting language." Farnsworth, Contracts Sec. 7.8 (1982).
 
 
 9
 Caldor insists that the plain language of the lease allows Caldor to assign the lease at any time. Caldor contends that "Tenant" means "Caldor and assigns" and that, accordingly, Article 8(B) only requires the occupying tenant, whether Caldor or Caldor's assignee, to operate a retail department store during the first five years of the lease. In support of its position that "Tenant" means "Caldor and assigns", Caldor quotes Art. 26(A) of the lease:
 
 
 10
 The words 'Landlord' and 'Tenant' ... shall mean where the context requires or admits, the persons named herein as Landlord and as Tenant, respectively, their heirs, legal representatives, successors and assigns....
 
 
 11
 Caldor further argues that, if Steel sought to require Caldor to operate a department store for five years, Steel merely had to add the word "Caldor" before the words "retail department store" in Article 8(B). In this regard, Caldor notes that Steel was fully aware of how to specifically designate a Caldor store, as evidenced by Article 8(A)'s reference to a " 'Caldor' retail department store."
 
 
 12
 While acknowledging the plausibility of Caldor's interpretation of the lease, the court determines that an equally, if not more, plausible interpretation equates "Tenant" specifically to "Caldor" in Article 8(B), creating ambiguity as to the assignability of the lease during the initial 5 years of the lease. Admittedly, the boilerplate language of Article 26(A) defines "Tenant" to include "assigns", but Article 26(A) also limits such an inclusion to "where the context requires or admits." In the context of Article 8(B), it is unclear whether "Tenant" means only Caldor, or Caldor and assigns. Article 8(B) states that "Tenant" agrees to "initially open ... and continuously operate the demised premises as a retail department store for a minimum of five (5) years thereafter." (emphasis added). Since Steel agreed to construct a building to Caldor's specifications, and since Caldor is the original tenant under the lease, a plausible inference arises that the parties expected Caldor, not an unnamed assignee, to "initially open" a retail department store under Article 8(B) of the lease. Also, the words "continuously operate" suggest an unbroken tenancy, arguably incompatible with an assignment, which suggests an interruption in the tenancy. Finally, Steel added, in handwriting, the words "continuously" and "for a minimum of five (5) years" to the typewritten language of Article 8(B), thereby emphasizing Article 8(B)'s requirement of an uninterrupted 5 year use obligation. See Farnsworth, Contracts Sec. 7.11 ("generally handwritten terms control typewritten or printed ones").
 
 
 13
 In light of the doubts raised concerning meaning of "Tenant" in Article 8(B), some significance attaches to the fact that Caldor drafted the lease. See Farnsworth, Contracts Sec. 7.11 (doubts resolved against drafter). To clarify its version of Article 8(B), Caldor could have stated in Article 8(B), or elsewhere in the lease, that the 5 year use language shall not be construed to limit Caldor's right to assign the lease. The lease makes no such clarification and, in fact, states almost the opposite, making assignments "subject to" Article 8. Indeed, the linchpin of this court's finding of ambiguity is that Article 17(C), the very provision authorizing assignments, specifically renders the assignment of the lease "subject to" Article 8.
 
 
 14
 Article 17(C) makes the assignability of the lease "subject to ... Article 8." The words "subject to" suggest that Article 8 limits the assignability of the lease. It is plausible, if not probable, that the 5 year continuous use obligation, contained in Article 8(B), is the very limitation on assignments contemplated by Article 17(C)'s "subject to" language; that is, no assignments during the first 5 years of the lease. Caldor maintains that the "subject to" language merely requires the assignee to operate a retail department store for the first 5 years of the lease. Stated differently, "subject to" merely creates a post-assignment requirement that the assignee adhere to Article 8(B). This construction, however, fails to limit the assignability of the lease and, consequently, is at odds with the gist of the words "subject to". Such a construction only states the obvious: after an assignment, the assignee must adhere to the terms of the lease. In this regard, Caldor's construction demotes the "subject to" clause to mere surplusage, violating a basic rule of contract construction. See Farnsworth, Contracts Sec. 7.11 ("an interpretation that gives meaning to the entire agreement is favored over one that makes some part of it mere surplusage").
 
 III.
 
 15
 The lease is ambiguous and thus the trial court acted properly in admitting parole evidence to discern the parties' actual intent in regard to the assignability of the lease during the first 5 years.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 The extrinsic evidence convincingly demonstrates that the parties intended for Caldor to operate a retail department store during the initial 5 years of the lease. For instance, Caldor's agent prepared an abstract of the lease, stating that "[t]here is a five-year continuous use obligation. Thereafter, if Caldor elects to discontinue use of the demised premises or to change the use, it must give the Landlord notice and Landlord may cancel the Lease." (A. 33) (emphasis added). Also, when Caldor sought to get out of the lease and Steel's agent asserted that Caldor was bound by the 5 year use obligation, Caldor's agent agreed that the lease was valid, but warned that if Steel "insisted on the operating clause, [Steel] would have a Caldor [that Steel] wouldn't be happy with." (A. 94)
 
 
 [2]
 The parties agree that Virginia law is applicable