Present: All the Justices

KENNETH A. DAVIS

v.  Record No. 050215    OPINION BY JUSTICE ELIZABETH B. LACY
                                    November 4, 2005
STEPHEN HOLSTEN, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stanley P. Klein, Judge

In this appeal, Kenneth A. Davis asserts that the trial court erred in ruling that substantial compliance does not apply to an escrow agreement obligating him to remove and replace synthetic stucco siding and rotten wood from a house and seeks a reversal of the trial court's finding that he did not comply with the terms of the agreement. Because we conclude that the trial court was correct in its application of the law and that its findings of fact are supported by the record, we will affirm the judgment of the trial court.

FACTS AND PROCEEDINGS

On July 11, 2002, Davis contracted to sell his Fairfax, Virginia, home to Stephen E. and Tami S. Holsten. At the time of contracting, the house was coated with Exterior Insulation Finishing System (EIFS), a type of synthetic stucco, which had caused water damage to the home. Paragraph 33 of the sales contract stated that prior to the date of settlement, Davis would "have or cause to have the Stucco replaced with hard coat Stucco." If the repairs were not made prior to

settlement, Davis would escrow $50,000 until "repairs are made and Stucco is replaced along with any rotted or damaged wood." Davis had not made the repairs by the date of settlement; thus, he, the Holstens, and Virginia Settlement Group, L.L.C. (VSG), an escrow agent, executed a contract entitled "Escrow Agreement" (the Agreement). Paragraph 2 of the Agreement incorporated the provisions of Paragraph 33 of the sales contract and required Davis to deliver $50,000 to VSG at settlement and to engage a contractor to do the work within ten days of the execution of the Agreement. Under the Agreement, when the obligations set out in Paragraph 2 were completed, VSG would release the escrowed funds to Davis. If the obligations were not completed within one year, VSG would pay the escrowed funds to the Holstens upon their written notification that the repairs and replacement were not completed.* Paragraph 4 of the Agreement also provided that Davis would indemnify the Holstens for losses, damages, costs, and attorney's fees associated with completing the reinstallation.

On August 19, 2002, Davis hired a contractor to perform the work required under the Agreement. The work did not progress smoothly. In an exchange of correspondence in early

_____

* The parties later amended the escrow agreement to allow Davis one year and one month to complete the work.

2003, the Holstens notified Davis of their dissatisfaction with the contractor's progress, stating the work was " 'complete' but not done."  In a February 6, 2003 letter, Davis informed the Holstens that he had inspected the reinstallation and believed he was entitled to the escrowed money.  He stated that he had contracted for the repair work within ten days of closing and that "[t]he stucco is replaced along with any wood."  Davis told the Holstens he expected "no delays" from them.

By a letter of the same date, Davis reported to VSG that "the repairs are now completed" and that it should consider the letter as Davis' demand for release of the escrowed funds. In the letter, Davis acknowledged matters of disagreement between himself and the Holstens but asserted that the Agreement does not allow withholding release of the funds "over a few very small details."

VSG refused to release the funds, stating that Davis' demand "did not create an absolute right to receive" the funds and that it could not release the funds "unless and until it is clear that the terms of the escrow have been met."  Davis then filed a Bill of Complaint against the Holstens and VSG for specific performance of the Agreement and for breach of contract.  He contended that since he had performed, or at least substantially performed, all of his obligations under

3

the Agreement, the Holstens and VSG had breached their duty to him by failing to release the $50,000 in escrow. Prior to trial, VSG paid into court the escrowed funds and was dismissed as a party.

At trial, various experts testified regarding the stucco reinstallation. Ronald E. Wright, an expert in engineering and in providing estimates for costs related to residential construction, testified on behalf of Davis. The trial court refused to allow Wright to testify whether, in Wright's opinion, the work the Agreement required was "substantially complete." The trial court concluded such testimony was not relevant; the contracting parties "could have said substantial performance . . . . But the parties didn't do that . . . . Every contract has a term of reasonableness that is part of it . . . . But that is a far cry from substantial completion." Davis objected to this ruling. Wright was allowed to testify that he estimated the total cost to repair the installation was $4,692 and that apart from the specific repairs about which he had testified, the installation was "complete."

Stanley Yeskolski, a certified EIFS inspector, testified for the Holstens. Prior to the litigation, the Holstens had engaged Yeskolski to inspect the property and prepare a stucco inspection report. At trial, Yeskolski testified on proper stucco reinstallation procedures and on the shortcomings of

4

the repair work. He testified that, among other things, crucial expansion joints were not installed at the front of the house and all the EIFS had not been removed from the exterior of the home. Yeskolski did not "think the installation was complete" because of the elements left out or performed incorrectly.

The Holstens also called Ralph D.(Donnie) Davis, a specialist in EIFS repair and restoration. Based on his inspection of the home prior to the reinstallation and his visual observations of the home after reinstallation, he opined that all of the rotten wood under the synthetic stucco had not been removed. Donnie Davis, like Yeskolski, identified a number of problems with the stucco reinstallation and recommended "completely removing it, put[ting] it in the dumpster, and start[ing] over" at a cost he estimated to be in excess of $50,000.

At the close of Davis' case in chief, the trial judge granted the Holstens' Motion to Strike Count I for specific performance because VSG had paid the funds into court and was no longer a party to the case. After the parties rested, the trial court, again relying on the language of the Agreement, concluded that the greater weight of the evidence did not show that the conditions for release of the escrowed funds were met because EIFS stucco remained under a bay window and control

5

and expansion joints reasonably necessary for appropriate repairs had not been installed. Accordingly, the trial court held that Davis had not carried his burden of proof to show that the Holstens had breached the Agreement and entered judgment in favor of the Holstens. From that decision, Davis appeals to this Court.

## DISCUSSION

Although Davis raises three assignments of error on appeal, his basic contention is that under the facts of this case, "a reasonable person could find that Davis completed, or at least substantially completed, his obligations under the escrow agreement." We begin by considering Davis' claim that the trial court erred in concluding that substantial compliance does not apply to the Agreement in this case.

### The Agreement

The Agreement the parties executed does not contain any reference to substantial completion; nevertheless, Davis contends that substantial compliance applies to all construction contracts and the Agreement is in the nature of a construction contract. Even if the Agreement is not a construction contract, Davis argues this Court should apply the principle of substantial compliance because performance here cannot be measured in terms of strict compliance in the absence of a definition of "completion." He also states that

6

the indemnity provision in Paragraph 4 of the Agreement is rendered meaningless if substantial compliance is inapplicable to this Agreement.  We consider these arguments in order.

A.

Davis argues that this Court has held that substantial compliance applies to contracts and specifically to construction contracts.  See, e.g., Buena Vista Co. v. McCandlish, 92 Va. 297, 304-05, 23 S.E. 781, 783-84 (1895); Kirk Reid Co. v. Fine, 205 Va. 778, 787-89, 139 S.E.2d 829, 835-37 (1965).  Davis asserts that because the Agreement in this case incorporated Paragraph 33 of the original sales contract, "it should be determined in terms of contract law and equity" and if a party has substantially received the benefit of the bargain, that party should be compelled to complete its part of the bargain by paying for the benefit received.  Continuing, Davis argues that the obligations under the Agreement are in the nature of construction obligations and, therefore, the Agreement is a construction contract subject to the principle of substantial compliance.  We disagree with Davis.

First, the Agreement is not a construction contract.  The Agreement does not anticipate that Davis would engage in any construction activities.  Davis' obligations under the Agreement were limited to contracting for the repair work

7

within ten days of the execution of the Agreement and depositing $50,000 with the escrow agent. Davis was entitled to the escrowed funds if within one year and one month the EIFS stucco was removed and replaced with hard coat stucco and the rotted or damaged wood was removed and replaced. Construction activities were necessary to meet the obligations under the agreement; nevertheless, the Agreement was not a construction contract between Davis and the Holstens. The relevant construction contract was between Davis and the contractor he engaged to perform the repairs.

Similarly the parties' incorporation of Paragraph 33 of the sales agreement did not make the Agreement a sales contract. The sales contract was completed at closing. The Agreement was a separate contract and compliance or default under the Agreement had no effect on the sale of the house.

B.

The Agreement, as titled by the parties, was an escrow agreement. It set out specific conditions for the release of the escrowed funds and made no reference to or provision for substantial compliance with those conditions. We have not had occasion to consider whether an escrow agreement, a contract in which a third party holds property that is to be released to another party to the contract upon completion of certain conditions precedent, see Humphreys v. R. & M. R. R. Co., 88

8

Va. 431, 451, 13 S.E. 985, 992 (1891), should be subject to substantial completion.

Davis argues that courts have required parties to comply strictly with the provisions of an escrow agreement only when completion of the conditions precedent was straightforward. See, e.g., Jones v. Gregg, 293 S.W.2d 545, 551 (Ark. 1956) (describing a seller providing an abstract of good and marketable title); In re Creative Data Forms, Inc., 41 B.R. 334, 336 (Bankr. E.D. Pa. 1984) (discussing a debtor defaulting on loan repayments); Commonwealth Land Title Ins. Co. v. 1616 Reminc Ltd. P'ship, 13 B.R. 948, 951 (Bankr. E.D. Va. 1981) (regarding a defendant who refused to release funds in escrow when the condition governing release was simply the passage of four years).  Davis contends the conditions in this Agreement are not straightforward because the term "completion" is open to interpretation.  Thus, Davis asserts that strict compliance should not be applied.

We do not find Davis' arguments persuasive.  Rather, we agree with the clear weight of authority that, unless the agreement provides otherwise, substantial performance will not be applied to an escrow agreement and compliance must be strict.  See, e.g., Commonwealth Land Title Ins. Co., 13 B.R. at 951 (strictly construing term in escrow agreement which required disbursement of any remaining funds in escrow after

9

four years from date of contracting); In re Creative Data Forms, Inc., 41 B.R. at 336-37 (declining to release $100,000 held in escrow account for debtor because the debtor failed to make some repayments on money it had borrowed); Jones, 293 S.W.2d at 551 (declining to apply substantial performance to release of escrowed funds, when release was conditioned upon sellers of real estate timely providing an abstract of good and marketable title); Love v. White, 363 P.2d 482, 484 (Cal. 1961)(holding:  "In this state the terms and conditions of an escrow must be performed.  The doctrine of substantial performance does not apply, and no title passes prior to full performance of the terms of the escrow agreement."); Watts v. Mohr, 194 P.2d 758, 761 (Cal. Ct. App. 1948) (refusing to apply substantial performance and to order release of funds from escrow where one party had failed to deliver timely to escrow agent a $6000 note and deed of trust to complete real estate transaction); Taft v. Taft, 26 N.W. 426, 430 (Mich. 1886) (holding:  "performance of the condition must be absolute and accurate, and cannot be dispensed with on any otherwise substantial performance."); Hart v. Barron, 204 P.2d 797, 808 (Mont. 1949) (finding part performance did not apply to escrow agreement for sale of land where buyer did not timely pay taxes or obtain a loan, both of which were conditions precedent to escrow agent delivering deed to

10

buyer); <u>Valentine Oil Co. v. Powers</u>, 59 N.W.2d 150, 157 (Neb. 1953) (refusing to order release of funds in escrow and citing inapplicability of substantial performance to escrow agreements where a party to oil and gas escrow agreement failed to continue drilling for oil as required by agreement).

Furthermore, we reject Davis' argument that we should not strictly apply the provisions of this Agreement because of uncertainty over the word "completion." A principle of interpretation applicable to escrow agreements applies to all such agreements, not just to some escrow agreements. As the trial court observed, it is not the province of the courts to add words to parties' contracts and their failure to provide a definition of "completion" does not provide a basis for applying a principle of construction other than that applicable to escrow agreements.

C.

Finally, we reject Davis' argument that strictly construing the Agreement negates the indemnity provision in Paragraph 4. Davis argues that Paragraph 4 obligates him to indemnify the Holstens if they had to complete the tasks of removing and replacing the EIFS stucco and rotten wood, even if <u>Davis</u> had received the escrowed funds. Paragraph 4, however, refers to situations in which the <u>Buyer</u>, the Holstens, has received some of the escrowed funds and

11

obligates Davis to "indemnify and hold harmless [the Holstens] from any loss or damages, including all costs and attorney's fees, as a result of any expense that [the Holstens] may incur in completing [Davis'] work as stated herein." As the trial court correctly stated, this provision protects the Holstens and makes Davis responsible in the event the cost of completing the work exceeds $50,000.

In summary, the trial court correctly declined to apply substantial compliance to the Agreement and, accordingly, did not err in refusing to allow Davis' expert to testify regarding substantial completion of the repairs.

## The Evidence

Davis also claims on appeal that the trial court erred in finding that he failed to complete his obligations under the Agreement. Because the trial judge heard the evidence ore tenus and was able to judge the credibility of the witnesses, we must afford his decree the same weight as a jury verdict and uphold his findings unless they are plainly wrong or without evidence to support them. See Shooting Point, L.L.C. v. Wescoat, 265 Va. 256, 264, 576 S.E.2d 497, 501 (2003) (citing Tauber v. Commonwealth, 263 Va. 520, 526, 562 S.E.2d 118, 120 (2002); Chesterfield Meadows Shopping Ctr. Assocs., L.P. v. Smith, 264 Va. 350, 355, 568 S.E.2d 676, 679 (2002)). Further, we will construe the facts in the light most

12

favorable to the Holstens, who prevailed below.  See Tauber, 263 Va. at 525, 562 S.E.2d at 120 (citing Hoffman Family, L.L.C. v. Mill Two Assocs. P'ship, 259 Va. 685, 696, 529 S.E.2d 318, 325 (2000)).

Davis argues that the trial court erroneously relied on the conditions the Holstens imposed in their correspondence with Davis and, thus, enlarged Davis' obligations when determining Davis failed to complete the Agreement.  For example, although the Holstens sought a warranty for the repair work and a home inspection in that letter, the Agreement did not impose as a condition precedent to the release of the funds either an extended warranty on the stucco installation or a home inspection.  Further, the Agreement made no mention of performance in a workmanlike manner.  Thus, Davis concludes that the trial court imposed conditions not present in the Agreement on the release of the escrowed funds.

The record does not support Davis' contention.  The trial court did not base its ruling on the Holstens' demands. Rather the trial court found the job incomplete based on expert testimony, uncontroverted at trial, that EIFS stucco was left under the bay window in violation of an express term of the Agreement and that some expansion joints, necessary for the replacement of the stucco, were not installed.  Donnie Davis also testified that not all the rotten wood under the

13

stucco had been removed and replaced.  Finally, Davis himself acknowledges that the contractor failed to remove EIFS stucco from beneath the bay window.

This record supports the trial court's conclusion that Davis did not carry his burden of proof in his breach of contract count to show that he had strictly complied with the provisions of the agreement and, therefore, that he was entitled to release of the funds.

For the foregoing reasons, we will affirm the judgment of the trial court.

<u>Affirmed</u>.