# CIRCUIT COURT OF ROANOKE COUNTY

F & W Management Corp. et al.

v.

American Shelter Corp., Inc.

February 23, 2006

Case No. CH05-102

BY JUDGE ROBERT P. DOHERTY, JR.

Plaintiff seller agreed to sell and Defendant buyer agreed to buy certain parcels of real estate for a fixed price. The property was to be sold in three separate groups and at three different times. The written contract called for the establishment of an escrow account containing buyer's funds. That money was to be used as part of the payment for the last group of parcels sold. Alternatively, it was to go to the seller as liquidated damages if the buyer defaulted, or it was to be returned to the buyer if the contract terminated for any reason other than the buyer's default.

Seller now demands delivery of the escrowed funds claiming that buyer has not purchased the various parcels of land in accordance with the schedule agreed upon in the written contract. Buyer argues that seller is not entitled to the escrow money because seller has not declared that it is formally terminating the contract based on a default by buyer. Buyer interprets the contract to require a statement to that effect from seller before the money can be paid. Each side believes that such a declaration by seller would be advantageous to the buyer and neither party agrees with the other's

understanding of the terms of the contract. Seller filed a declaratory judgment action asking the Court to construe the contract. Buyer responded with a motion for summary judgment, a demurrer, and a counterclaim.

## Definition of Terms

The parties to this contract have tried to define different phrases in the context of their agreement. Key to the resolution of the dispute is the definition of the term "seller portfolio transaction termination notice." The definition for "seller portfolio transaction termination notice," as listed in Exhibit 1.2 of the "Defined Terms" section of their contract, is that it "shall have the meaning set forth in Section 3.2(b)." Section 3.2(b) says that if the buyer sends a "feasibility period termination notice," which is the notice the buyer sends the seller saying that it will not purchase one of the parcels of real estate in a particular group, then the seller can cancel the entire contract by sending a "seller portfolio transaction termination notice."

Seller contends that "seller portfolio transaction termination notice" simply means a notice sent by the seller canceling the entire contract. Buyer argues that it is true that it is a notice sent by the seller to cancel the entire contract, but that it can only be used in response to receiving a "feasibility period termination notice" from buyer. If the Court were to define the disputed phrase by trying to understand each of the words used in it, and knowing that the parties have defined "portfolio" to mean all of the individual properties being sold, then the phrase "seller portfolio transaction termination notice" would be a notice sent by the seller terminating the transaction that deals with all of the land that is being sold. Such a definition would be consistent with the direction given in *D. C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135 (1995), instructing the court to determine a contract's plain meaning by applying the usual and ordinary meaning of the words used by the parties.

Another way to resolve the issue is to read the entire contract and see if any conflict exists by using each party's definition of the debated phrase. In Section 3.5 of the contract it says that if more than six of the individual partners of seller refuse to approve the sale of their individual piece of property, then seller may cancel the entire contract by sending a "seller portfolio transaction termination notice" to the buyer. There is no requirement in Section 3.5 that this notice be sent in response to a "feasibility period termination notice," as argued by buyer. The definition urged by seller fits perfectly in Section 3.5 and throughout the entire contract. In order to accept the buyer's definition of a "seller portfolio transaction termination notice" the

Court would have to ignore some of the language of Section 3.5. That would be contrary to the standard rules of contract construction. No word or clause in a contract is to be treated as meaningless if any reasonable meaning consistent with the other parts of the contract can be given to it. *Winn v. Aleda Const. Co.*, 227 Va. 304, 307 (1984). Accordingly, for each of the reasons set forth herein, the Court finds that a "seller portfolio transaction termination notice" is simply a notice to the buyer that seller is canceling the entire contract.

## Escrow Provisions

Buyer opposes sellers demand for the escrow money because he believes that the escrow portion of the contract must be strictly construed pursuant to the holding in *Davis v. Holsten*, 270 Va. 389 (2005). Buyer contends that seller must terminate the contract as a condition precedent to the receipt of the funds, an action seller has not yet taken. The escrow portion of the contract that the parties are fighting over incorporates by reference a paragraph entitled "Purchaser's Default," a provision the buyer views as almost inconsequential. Buyer says that the first half of the Purchaser's Default paragraph applies only when buyer gives a "feasibility period termination notice" and seller chooses not to give a "seller portfolio transaction termination notice." The Court has previously determined that theory to be incorrect as it is based on a flawed understanding of the language used in the contract. The argument made by the buyer to the remainder of the provisions contained in the Purchaser's Default paragraph is a restatement of the buyers position that a strict construction of the contract requires seller to terminate the entire contract before he is entitled to the escrow funds.

Seller claims he has done exactly what the contract requires him to do in order to receive the money from the escrow account. He argues that the Purchaser's Default portion of the contract spells out the specific procedure to follow when buyer fails to purchase at least one of the individual pieces of real estate, as seller alleges buyer has failed to do in this case. That procedure simply calls for the seller to notify the escrow agent that buyer is in default and to demand the money. If buyer objects to the delivery of the money, then the parties are to submit the matter to a court for determination.

It is the function of the Court to construe the contract made by the parties and to try to give effect to every provision they have written. This is accomplished by harmonizing conflicting provisions so as to effectuate their intent. See *Ames v. American Nat. Bank of Portsmouth*, 163 Va. 1, 38-39 (1934). One paragraph cannot be taken out of context. The entire contract

246

must be read in order to interpret and understand it. When there is a conflict in its terms, a general provision in a contract must give way to a specific one covering the same ground. *Bott v. Snellingburg*, 177 Va. 331, 339 (1941).

The contract in this case is one to sell land and not a pure escrow contract that requires strict construction, as contemplated by the *Davis v. Holsten* case. Its terms authorize seller to terminate the contract upon default by buyer and thereafter to demand the escrow money as liquidated damages. Its terms also authorize the seller to demand the escrow money before terminating the contract, provided buyer refuses to purchase one or more pieces of real estate and provided seller has done all that is required to effectuate the sale. If these are conflicting terms, then the general provision argued by the buyer must give way to the specific provision as used by the seller. If they are not conflicting terms, then seller has simply chosen one of the permissible remedies. In the alternative, the terms may be harmonized by reading them to allow the seller to do exactly what he is now doing, that is, by declaring that buyer is in default and proceeding to terminate the contract by demanding the escrow money. The actual termination will occur after the buyer's default, as required by the contract, and simultaneously with the delivery of the escrow funds. Accordingly, the motion for summary judgment is denied and the demurrer is overruled.