Present: All the Justices

NICHOLS CONSTRUCTION CORPORATION

OPINION BY
v. Record No. 071553      JUSTICE LAWRENCE L. KOONTZ, JR.
June 6, 2008
VIRGINIA MACHINE TOOL COMPANY, LLC

FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

This appeal arises from a dispute between the owner of an industrial building and a roofing contractor involving a breach by the contractor of a construction contract between those parties for the installation of a new roof on the building. We consider whether the amount of the damages awarded by the circuit court was excessive as a matter of law. We also consider whether the circuit court erred in failing to offset the amount of the damages awarded to the owner by the amount the owner still owed the contractor under the contract.

BACKGROUND

According to well settled principles, we recite the relevant facts in the light most favorable to the plaintiff, Virginia Machine Tool Company, LLC, the prevailing party in the circuit court. Davis v. Holsten, 270 Va. 389, 398, 621 S.E.2d 101, 106 (2005). Moreover, because the appellant does not contest the findings that it breached the contract and is liable to the plaintiff, we will restrict our summary to those facts necessary to decide the issues before us. See Union of

, 268 Va. 512, 514, 603 S.E.2d 920, 922 (2004).

In July 2002, Virginia Machine Tool purchased approximately three and a half acres of land in Bassett, Virginia with an existing industrial building, along with certain equipment and other fixtures, for between $180,000 and $200,000. The industrial building, which Virginia Machine Tool intended to use for its business, had a flat roof that was in a state of disrepair at the time of the purchase. Consequently, Virginia Machine Tool sought proposals and bids from roofing contractors, including Nichols Construction Corporation, to repair or replace the existing roof. Sheldon Nichols, owner of Nichols Construction, recommended the installation of a metal, standing seam roof, also known as a "rafter system" roof, over the existing flat roof and estimated that installing this roof would cost approximately $165,000. After Virginia Machine Tool advised Nichols Construction that it had received a lower bid from a competitor, Nichols Construction was permitted to submit a lower bid.

In April 2003, Virginia Machine Tool entered into a contract with Nichols Construction, prepared by Sheldon Nichols on a standard American Institute of Architects form, for the installation of the roof, including reinforcement of the building's structural walls as necessary to support the new

roof, and to perform additional renovation of the building. The contract specifically called for Nichols Construction to install a prefabricated roofing system manufactured by Varco Pruden International. Sheldon Nichols is a registered dealer for Varco Pruden. The parties agree that the portion of the contract price related to the installation of the roof and the support reinforcement, including subsequent minor changes in the specifications, was approximately $140,000. The parties further agree that the contract precluded the recovery of consequential damages in the event of a breach of the contract.

As work progressed on the installation of the roof, Virginia Machine Tool became dissatisfied with the quality of the work performed by Nichols Construction. Even before the work was complete, it became evident that the roof was sagging and that water was not properly draining from it. Representatives of Varco Pruden inspected the roof installation and recommended corrective measures which Virginia Machine Tool agreed to and Nichols Construction effectuated. Nevertheless, problems persisted with the roof. Varco Pruden ultimately conceded that the ridge caps of the roof were defective. Although Nichols Construction continued its remedial efforts for a time, the roof continued to sag and leak. Virginia Machine Tool ultimately barred Nichols Construction from completing the

3

final phase of the construction, refused to allow any further remedial efforts, and withheld final payment on the contract.

On February 11, 2005, Virginia Machine Tool filed a motion for judgment in the Circuit Court of Henry County against Nichols Construction alleging breach of contract.[1]  Contending that the roof installed by Nichols Construction was defective both in design and as a result of improper installation, Virginia Machine Tool asserted that the sole remedy for the breach was removal of the roof and replacement with a new roof. Virginia Machine Tool sought $500,000 in damages to cure the breach.[2]  Nichols Construction filed grounds of defense generally denying the allegations of the motion for judgment.

The circuit court conducted a three-day bench trial beginning on February 1, 2007.  The majority of the evidence adduced during the trial was directed to whether, and to what extent, Nichols Construction breached the contract.  As noted above, Nichols Construction does not challenge the circuit

---

[1] This case was filed before we amended our rules, effective January 1, 2006, to provide that a civil action, which includes legal and equitable causes of action, is commenced by filing a "complaint."  Rules 3:1 and 3:2; see also Ahari v. Morrison, 275 Va. 92, 96 n.2, 654 S.E.2d 891, 893 n.2 (2008).

[2] Virginia Machine Tool subsequently filed an amended motion for judgment adding claims for breach of express and implied warranties.  The amended motion for judgment did not materially alter the breach of contract claim, and Virginia Machine Tool ultimately abandoned the breach of warranty claims.

4

court's finding that it breached the contract.  Accordingly, we will summarize the evidence in that regard by reciting the express findings from an opinion letter issued by the circuit court and adopted by reference in its final order.  The court found

> by a preponderance of the evidence that [Nichols Construction] breached the contract by (1) failing to maintain a 1/4"x12" slope [of the roof]; (2) failing to maintain two foot roof panel modulation; (3) failing to maintain acceptable beam deflection; (4) failing to use specified materials (24 gauge galvalume); (5) failing to reinforce the center wall; (6) failing to provide continuous water run-off; (7) failure to properly install the ridge cap; and (8) failure to provide or design sufficient ventilation for the roof.[3]

As relevant to the issues raised in this appeal, the circuit court heard expert testimony on the measure of damages from Charles R. Howard, a licensed professional engineer doing business as Metal Roof Consultants.  Virginia Machine Tool employed Howard to inspect the roof installed by Nichols Construction and to make recommendations for its repair or replacement.  Howard testified that in his opinion, a rafter system roof was "definitely not the right choice for this building."  Rather, Howard indicated that he would have recommended a "post and purlin[] system" roof.

---

[3] Galvalume refers to an aluminum/zinc/silicone coating applied to sheet steel to prevent oxidation.

5

Howard testified that regardless whether the defective roof were to be replaced with a new rafter system roof or a post and purlin system roof, the existing roof would have to be removed at a cost of $60,800.[4] Howard prepared estimates for the installation of either a rafter system roof or a post and purlin system roof, the former being $426,850 and the latter $370,900.[5]

Nichols Construction did not present any expert testimony with respect to damages. Sheldon Nichols testified that the rafter system roof that Howard recommended as one of the two replacement options was "the same system" as the Varco Pruden roof Nichols Construction had installed, although Howard's estimate included a ventilation system, which Nichols Construction's bid had not originally called for, and included slightly more insulation and different placement of the insulation. Sheldon Nichols also testified that he did not recommend a post and purlin system roof because, unlike the

_____

[4] The principal distinction between a rafter system and a post and purlin system is the manner in which the weight of the roof is distributed over the building.

[5] Howard also prepared an estimate of $72,869 for remedial measures to repair the existing roof. Howard testified, however, that this estimate did not include the cost of replacing the roofing panels, which would also be required if the existing roof were to be retained. The circuit court found that the roof would have to be removed and replaced. Nichols Construction has not assigned error to this finding and, accordingly, we will not consider the cost of repair estimate as a viable alternative to the other estimates in considering the appropriate measure of damages in this case.

rafter system roof, installation of a post and purlin system roof likely would have required removal of asbestos, which he believed was present in the existing flat roof. Howard's estimate for the post and purlin system roof did not include the cost of asbestos removal.

Following conclusion of the evidence, the parties submitted written post-trial memoranda to the circuit court in lieu of closing arguments. In its memorandum, Virginia Machine Tool asserted that "the only way to bring this roof within contract specifications is to remove it and replace it." Accordingly, citing Lambert v. Jenkins, 112 Va. 376, 381, 71 S.E. 718, 720 (1911) and Kirk Reid Co. v. Fine, 205 Va. 778, 787, 139 S.E.2d 829, 835 (1965), Virginia Machine Tool contended that the proper measure of its damages should be the cost of removal of the defective roof and replacing it with a properly installed rafter system roof. Virginia Machine Tool contended that only this measure of damages would put it in the same position it would have been if the contract had been properly performed.

Nichols Construction responded in its post-trial memorandum that at best Virginia Machine Tool was entitled to recover only the value of the original contract, contending that Howard's estimate for replacing the defective roof with a new rafter system roof was inaccurate. Measuring the damages by this estimate, Nichols Construction contended, would result in a

7

windfall to Virginia Machine Tool in that it "had contracted for a Chevy of a roof but wants that replaced with a Cadillac of a roof." In making its argument, however, Nichols Construction did not cite any relevant authority and did not identify any evidence in the record that rebutted the accuracy of Howard's estimate or established that the proposed replacement roof was markedly superior to the contracted-for Varco Pruden standing seam roof.

In its opinion letter, the circuit court, after having found Nichols Construction to be in breach of the contract, determined that "the only way to fix the [defective] roof is to remove and replace it. There is no evidence that the cost of repairs exceeds the economic value of the building." Implicitly, the court determined that the appropriate measure of damages was the cost to provide Virginia Machine Tool with the intended benefit of the contract, that is, to provide it with a properly installed, non-defective rafter system roof. Accordingly, the court ruled that Virginia Machine Tool was entitled to damages for the cost of removing the defective roof and replacing it with a new rafter system roof in accord with Howard's estimate. After making adjustments for sales tax, profit and the cost of a performance bond, the circuit court determined that Virginia Machine Tool's damages were $450,842.

The court further ruled that Nichols Construction was not entitled to an offset for the balance due on the contract.

Prior to entry of a final order confirming the judgment, Nichols Construction acquired new counsel and filed a motion seeking, among other things, reconsideration of the circuit court's ruling or remittitur of the damages awarded. Nichols Construction essentially contended that the circuit court's award of damages was "grossly disproportionate" to the original value of the contract and that the court should award "a lesser amount," which Nichols Construction contended should not exceed the value of the original contract and the cost of removing the defective roof. Nichols Construction also contended that the court erred in not allowing it an offset for the balance due on the contract. The circuit court denied Nichols Construction's motion without comment.

In a final order dated April 23, 2007, the circuit court entered judgment of $450,842 for Virginia Machine Tool along with pre-judgment interest running from November 29, 2005 in accord with the views expressed in its opinion letter, the rationale of which it adopted into the order by reference. We awarded Nichols Construction this appeal.

DISCUSSION

Unless specific performance is sought and available, the proper measure of unliquidated damages for breach of a contract

9

"is the sum that would put [the plaintiff] in the same position, as far as money can do it, as if the contract had been performed." Taylor v. Flair Property Assocs., 248 Va. 410, 414, 448 S.E.2d 413, 414 (1994). The parties do not dispute this principle, rather they dispute how to calculate the sum that would put Virginia Machine Tool in the same position as if the contract had been performed.

While a plaintiff has the burden to establish its damages with reasonable certainty, id. at 415, 448 S.E.2d at 416, "[d]amages need not be established with mathematical certainty. Rather, a plaintiff is required only to furnish evidence of sufficient facts to permit the trier of fact to make an intelligent and probable estimate of the damages sustained." Id. at 414, 448 S.E.2d at 416. Accordingly, the determination of damages for a breach of contract will always be fact specific, and no single method exists for calculating the amount necessary to place the plaintiff in the position he would have occupied had the breach not occurred. See Appalachian Power Co. v. John Stewart Walker, Inc., 214 Va. 524, 535, 201 S.E.2d 758, 767 (1974).

This Court has long recognized two methods of determining monetary damages in breach of construction contract cases, which were potentially implicated in the present case. These have come to be commonly designated as the "cost rule" which is "the

10

cost of correcting the defects in the [construction] and making it conform to the terms of the contract" and the "value rule" which is "the difference between the value of the [structure] properly completed according to the contract and the value of the defective structure."  Mann v. Clowser, 190 Va. 887, 903, 59 S.E.2d 78, 85-86 (1950).

We have also observed that "cost of correction or completion rather than loss in property value ordinarily affords the proper basis for measuring the damages which result to the owner from the breach of a building or construction contract, or other contract to change the condition of real property.  The propriety of applying such measure of damages is especially clear where correction or completion would not involve unreasonable destruction of work done by the contractor and the cost thereof would not be grossly disproportionate to the results to be obtained."  Green v. Burkholder, 208 Va. 768, 773, 160 S.E.2d 765, 768 (1968).  In this context, we have further observed that "[t]he cost measure [of damages] is appropriate unless the cost to repair . . . would involve unreasonable economic waste."  Lochaven Co. v. Master Pools by Schertle, Inc., 233 Va. 537, 543, 357 S.E.2d 534, 538 (1987); see also Klaiber v. Freemason Assocs., 266 Va. 478, 488, 587 S.E.2d 555, 560 (2003); Kirk Reid Co., 205 Va. at 789, 139 S.E.2d at 837.

11

On appeal, the thrust of Nichols Construction's assertions, consistent with its post-trial memorandum, is that the award of damages in this case places Virginia Machine Tool in a better position than it would have enjoyed had the contract been performed as expected.  Nichols Construction maintains that under either the cost measure of damages or the value measure of damages the award of damages in this case is excessive as a matter of law.  In support of this contention, Nichols Construction first points out that the contract called for the installation of a $140,000 roof and excluded the recovery of consequential damages.  Second, Nichols Construction maintains that the contract specifically provided for the installation of a "Varco Pruden" roof and Virginia Machine Tool was not awarded damages for a Varco Pruden roof but, rather, damages for a different roof system.  Lastly, Nichols Construction contends that Virginia Machine Tool was awarded the cost of replacement of the defective roof rather than the cost of repair and the amount so awarded was more than two times the value of the building, including land and equipment, purchased just five years earlier.

While the considerable disparity between the contract price for the roof and the amount of damages awarded to Virginia Machine Tool is, initially at least, facially compelling evidence in support of Nichols Construction's position that the

12

award results in a betterment or windfall to Virginia Machine Tool, we are not persuaded that such is actually the case. The record clearly supports the circuit court's conclusion that the defective roof would need to be removed and replaced with a new roof. Repair of the defective roof was not established as a reasonable option to replacement with a new roof.

At trial, Nichols Construction offered no evidence to rebut the accuracy or reasonableness of Howard's testimony regarding the cost to remedy Nichols Construction's breach of the contract. The new roof was not shown to be a different or superior roof system than that of the contracted-for Varco Pruden standing seam roof. Moreover, no evidence was presented as to what the reasonable cost for a Varco Pruden standing seam roof would have been in 2007 when the circuit court was called upon to determine the amount of the damage award.

Finally, Nichols Construction offered no evidence of the current value of Virginia Machine Tool's building. Moreover, the record establishes that Virginia Machine Tool purchased the property with full knowledge that the existing roof was in a state of disrepair. Accordingly, it is a matter of speculation that the 2002 vague purchase price of approximately $180,000 to $200,000 reasonably reflects the value of the property with a properly installed roof in 2007. Indeed, the circuit court's ruling on this point was not that the value of the building

13

exceeded the cost of replacing the defective roof, but that there had been no evidence presented by Nichols Construction regarding this point.

In this case, Nichols Construction was required to proffer competent evidence either that the cost of replacement of the roof was less than Virginia Machine Tool contended, or that an award of cost damages would be grossly disproportionate and result in economic waste. In the absence of such evidence, the circuit court as the trier of fact would have been required to resort to speculation and conjecture in order to find that cost damages in accord with Howard's estimate was not the appropriate remedy. Cf. Carr v. Citizens Bank & Trust Co., 228 Va. 644, 652, 325 S.E.2d 86, 90 (1985). Nichols Construction failed to produce sufficient evidence on either ground to overcome Virginia Machine Tool's prima facie case regarding damages and, accordingly, we hold that the circuit court did not err in awarding damages for the breach of the contract based upon a cost measure as reflected in Howard's estimate for the removal of the defective roof and replacement with a new rafter system roof, which was the object of the original contract.

Nichols Construction also contends that the circuit court erred in not allowing it an offset for the amount it claimed remained due under the contract. In rejecting Nichols Construction request for an offset, the circuit court cited Kirk

Reid Co. However, as Nichols Construction notes on brief in this appeal, Kirk Reid Co. actually stands for the proposition that a contractor is entitled to recover the balance due on a contract as an offset in the absence of evidence that the breach of the contract was caused by bad faith or a willful departure from the contract. 205 Va. at 789-90, 139 S.E.2d at 837. There is no assertion or evidence in the record that Nichols Construction's breach of the contract was willful or the result of deliberate bad faith. Accordingly, we hold that the circuit court erred in failing to award Nichols Construction an offset for the amount due to it on its contract with Virginia Machine Tool.

CONCLUSION

For these reasons, we will affirm the judgment in favor of Virginia Machine Tool for $450,842, but we will reverse that portion of the judgment denying Nichols Construction an offset for any balance due on the April 2003 contract. We will remand the case to the circuit court for a calculation of the amount of the offset against the judgment and a recalculation of the pre-judgment interest due on the adjusted award of damages.

Affirmed in part,
reversed in part,
and remanded.

15