COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges AtLee and Malveaux

TOTAL QUALITY LOGISTICS

MEMORANDUM OPINION[*] BY
v.      Record No. 0009-22-2      CHIEF JUDGE MARLA GRAFF DECKER
NOVEMBER 1, 2022

RIVERSIDE TURF, LLC

FROM THE CIRCUIT COURT OF CHARLES CITY COUNTY
B. Elliott Bondurant, Judge

(Monica Taylor Monday; Jeffrey P. Miller; Gentry Locke, on briefs),
for appellant. Appellant submitting on briefs.

(Charles Arthur Gavin; Deskevich, Gavin & Harris, P.C., on brief),
for appellee. Appellee submitting on brief.

Riverside Turf, LLC, filed a warrant in debt against Total Quality Logistics for breach of

contract. The trial court found in favor of Riverside Turf and entered judgment against Total

Quality Logistics and awarded damages.

Total Quality Logistics argues that the trial court erred by not applying the forum

selection clause in a 2012 contract between it and Riverside Turf's predecessor company. In

addition, Total Quality Logistics contends that the court erroneously concluded that a series of

emails exchanged by the parties in 2020 formed a contract. For the following reasons, we affirm

the judgment of the trial court.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In 2020, a representative from Total Quality Logistics, a freight broker, contacted Riverside Turf, a sod company. The representative asked if Riverside Turf needed the company's services arranging freight transportation. As it happened, Riverside Turf wanted sod from Kentucky delivered to a soccer field in Virginia. The parties agreed that Total Quality Logistics would arrange the transportation. Through a series of emails, they set the particular price, dates, times, locations, amount of sod to be transported, and types and number of trucks to be used. When Total Quality Logistics could not find Riverside Turf in its credit records, Riverside Turf prepaid for the transaction, which totaled $16,200.

On the pre-arranged day for the first pickup of the sod in Kentucky, however, Total Quality Logistics could not secure the necessary trucks. The sod, already cut for transport, did not survive and was unsalvageable. Total Quality Logistics refunded Riverside Turf the amount paid for the freight transaction but did not reimburse it for the dead sod. Nor did it pay Riverside Turf's expenses incurred for the workers and equipment on site at the soccer field to install the sod.

Riverside Turf filed a warrant in debt in general district court for the damages incurred due to the failure to transport the sod. Through a special appearance, Total Quality Logistics objected to venue. The general district court ruled in Riverside Turf's favor and ultimately awarded Riverside Turf damages.

Total Quality Logistics appealed to the circuit court and again objected to venue, moving to dismiss the action on that ground. It relied on the terms and conditions in a 2012 contract. In 2012, Riverside Farm, doing business as Riverside Turf, submitted a credit application to Total

---

[1] In accordance with well-established legal principles, an appellate court reviews the evidence in the light most favorable to the prevailing party at trial, in this case, Riverside Turf. *Nichols Constr. Corp. v. Va. Mach. Tool Co., LLC*, 276 Va. 81, 84 (2008).

Quality Logistics through which it agreed to certain terms and conditions (the 2012 terms and conditions). One of those terms was that "[t]he state courts located in Clermont County, Ohio shall have exclusive and irrevocable jurisdiction and shall be the exclusive venue with respect to any claim, counterclaim, or dispute arising in connection with any transactions, loads, or other business between Total Quality Logistics and applicant."

Riverside Turf defended against the motion on two grounds. First, it argued that the 2012 terms and conditions did not apply because Riverside Turf did not use credit with Total Quality Logistics for the transaction. Second, Riverside Turf contended that it was not a party to the 2012 contract. In 2012, Riverside Turf did not exist as a legal entity. Instead, Riverside Farm operated under the trade name Riverside Turf. In 2013, the owner of Riverside Farm formed a limited liability company named Riverside Turf. The original entity, Riverside Farm, was the "row crop division," and the new entity, Riverside Turf, was the "sod division." The two companies operate under the same ownership but are separate legal entities. They have separate employer identification numbers and file separate tax returns. Riverside Turf used Total Quality Logistics to deliver freight intermittently over the years, in 2014, 2016, and 2019. During that time, Total Quality Logistics was not informed of the change in corporate structure.

The trial court held that the 2012 terms and conditions did not apply to the instant dispute because Riverside Turf was "a totally different company" than Riverside Farm. After hearing the evidence, the court, sitting without a jury, concluded that a separate 2020 contract existed between the parties. It further found that Total Quality Logistics had breached that contract. Consequently, the court entered judgment for Riverside Turf and ordered Total Quality Logistics to pay Riverside Turf $13,567, plus interest and costs.

ANALYSIS

On appeal, Total Quality Logistics argues that the trial court erroneously held that the terms and conditions in the agreement signed in 2012 did not form part of the contract between the parties. Alternatively, Total Quality Logistics contends that the court erred in holding that the parties formed a contract based on their emails in 2020.

"We begin our analysis by recognizing the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness." *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019) (quoting *Stiles v. Stiles*, 48 Va. App. 449, 453 (2006)). Nonetheless, appellate courts apply de novo review to legal questions such as "whether [a valid] contract exists." *Spectra-4, LLP v. Uniwest Com. Realty, Inc.*, 290 Va. 36, 42 (2015) (alteration in original) (quoting *Mission Residential, LLC v. Triple Net Props., LLC*, 275 Va. 157, 161 (2008)); *see Phillips v. Mazyck*, 273 Va. 630, 635 (2007). Similarly, "what the terms of a contract are" and "how those terms apply [to] the facts of the case" are "purely legal issues" subject to the same standard of review. *Spectra-4*, 290 Va. at 43. In contrast, when reviewing factual determinations, an appellate court defers to the trial court's judgment, as it would "a jury verdict[,] and uphold[s its] findings unless they are plainly wrong or without evidence to support them." *Davis v. Holsten*, 270 Va. 389, 397-98 (2005). When conducting this analysis, the reviewing court views the facts in the light most favorable to the party that prevailed below. *Id.* at 398.

## I. 2012 Terms and Conditions

Total Quality Logistics challenges the trial court's conclusion that the 2012 terms and conditions did not bind Riverside Turf because it was a different entity than Riverside Farm and therefore not a party to the 2012 agreement. Total Quality Logistics argues that Riverside Turf,

LLC, was a party to the 2012 contract because it is "but a mere continuation" of the "Riverside Turf" division that operated under Riverside Farm until 2013.[2]

This issue presents a mixed question of law and fact. *See Spectra-4*, 290 Va. at 44-45 (considering whether the express contracts between two entities affected the relationship between one of those companies and a third entity); *J. Maury Dove Co. v. New River Coal Co.*, 150 Va. 796, 827 (1928) (explaining the principles of assigning a contract to a third party). *See generally Eure v. Norfolk Shipbuilding & Drydock Corp.*, 263 Va. 624, 631, 635 (2002) (applying a mixed standard of review to determine whether to "disregard" the separate corporate natures of a parent and subsidiary entity). The party asserting that a court should "disregard" the separate legal identity of a corporation or limited liability company bears the burden to prove facts supporting that proposition. *Cf. Eure*, 263 Va. at 634 (applying this burden of proof in the context of piercing the corporate veil).

Riverside Farm is a separate legal entity from Riverside Turf. The two entities have separate employment identification numbers and file separate tax returns. They operate independently, despite their shared ownership, shared industry, and the fact that Riverside Turf inherited its website from Riverside Farm. *See Spectra-4*, 290 Va. at 40 (holding that

---

[2] In support of this assignment of error, Total Quality Logistics notes that it was not informed of any change of corporate structure and had no reason to think it was dealing with a different entity in 2020 than it had in 2012. It cites the proposition that an individual can act as an agent for a company. *See generally Equitable Variable Life Ins. Co. v. Wood*, 234 Va. 535, 539 (1987) ("[W]hen an agent, acting within the scope of his apparent agency, enters into a contract with a third person 'the principal becomes immediately a contracting party, with both *rights* and liabilities to the third person.'" (quoting Restatement (Second) of Agency § 8 cmt. d (1957) (emphasis added))). However, Total Quality Logistics did not argue below that in 2012 Riverside Farm was the agent of Riverside Turf, a limited liability company that had not yet been formed. *See* Rule 5A:18. We decline to address the applicability of the agent-principal analytical framework here for the first time on appeal. *See Tackett v. Arlington Cnty. Dep't of Human Servs.*, 62 Va. App. 296, 324-25 (2013); *see also RECP IV WG Land Invs. LLC v. Cap. One Bank (USA), N.A.*, 295 Va. 268, 285 n.12 (2018) (applying Rule 5:25, the Supreme Court of Virginia equivalent to Rule 5A:18).

Jefferson/LBG, LLC, and Jefferson Commercial Real Estate Services, Inc., were two separate legal entities despite similar titles, shared ownership, and same services).

In addition to the fact that the companies have separate identities, the record does not show that Riverside Turf assumed the obligations of Riverside Farm under the terms and conditions in the 2012 contract. *Cf. J. Maury Dove Co.*, 150 Va. at 826-27 (recognizing that a third party can assume an obligation under a contract). We find no evidence in the record that Riverside Turf "succeeded to or [was] assigned any rights and obligations created under" the 2012 terms and conditions agreement. *See Spectra-4*, 290 Va. at 44. *Compare Spectra-4*, 290 Va. at 44 (concluding that the contractual rights were not assigned or passed on to a successor), *with Cygnus Newport-Phase 1B, LLC v. City of Portsmouth*, 292 Va. 573, 578 (2016) (involving a contract expressly providing that it would likewise bind successors to a contractual party).

On the instant facts, the trial court did not err in concluding that Total Quality Logistics did not establish that Riverside Turf, LLC, was bound by the 2012 terms and conditions signed and agreed to by Riverside Farm. *Cf. Eure*, 263 Va. at 634 (placing the burden of proof on the party asserting that a court should "disregard" the separate legal identity of a corporation).

Total Quality Logistics relies on *Wright-Caesar Tobacco Co. v. A. Hoen & Co.*, 105 Va. 327, 332 (1906). In that case, the Supreme Court of Virginia held that the company's name change did not transform it into a new entity. However, there, it was undisputed that a single entity simply changed its legal name. *Wright-Caesar*, 105 Va. at 333. In contrast, this case involves two separate legal entities, Riverside Farm and Riverside Turf. Consequently, *Wright-Caesar* is not controlling.

In short, Riverside Farm agreed to the 2012 terms and conditions. Riverside Turf was not a party to the 2012 agreement. There is no evidence that Riverside Turf assumed the obligations of Riverside Farm under the 2012 contract. On this record, the trial court did not err in concluding that Total Quality Logistics failed to establish that Riverside Turf was bound by the 2012 contract

entered into by Riverside Farm.[3]  Therefore, the venue provision in the 2012 terms and conditions

did not control, and the trial court had proper venue.

## II.  2020 Email Contract

Total Quality Logistics argues that the trial court erred in holding that a contract existed

between the parties through their 2020 emails.  It suggests that the parties did not adequately form a

valid contract because they did not agree on all of the essential elements of the transaction,

specifically, the perishability of the sod.[4]

For an agreement to form a valid contract, there must be an offer, acceptance, and "valuable

consideration."[5]  *Dean v. Morris*, 287 Va. 531, 536 (2014) (quoting *Montagna v. Holiday Inns, Inc.*,

221 Va. 336, 346 (1980)).  In addition, for an agreement to be binding, it "must be sufficiently

definite to enable a court to give it an exact meaning."  *Id.* at 537 (quoting *Smith v. Farrell*, 199 Va.

121, 127 (1957)).  This principle requires that the agreement's terms are certain and complete.  *Id.*

---

[3] In light of this holding, we do not address the appellant's related argument that those 2012 terms and conditions applied to all transactions between the parties, not just those conducted on credit with Total Quality Logistics.  *See, e.g.*, *Watson-Scott v. Commonwealth*, 298 Va. 251, 258 n.2 (2019) (recognizing that appellate courts should decide cases "on the best and narrowest grounds" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

[4] In support of this proposition, Total Quality Logistics posits that the federal statutory scheme should apply here and that under it, Riverside Turf, the shipper, bore the burden of informing Total Quality Logistics, the carrier, of "any specific consequences or damages that m[ight] result from delay prior to the time the bill of lading [was] issued."  *See* 49 U.S.C. §§ 14706(a)(1), (b), 14501(c)(1).  Despite this argument on appeal, in the court below, Total Quality Logistics did not defend against the breach of contract claim based on federal law.  *See* Rule 5A:18; *Jessee v. Jessee*, 74 Va. App. 40, 51 n.8 (2021) ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011))).  Therefore, the question of the applicability of federal law in this case is procedurally barred under Rule 5A:18.  *See Tackett*, 62 Va. App. at 324-25.

[5] Total Quality Logistics does not dispute that a contract *can* be formed via email.  *See Chittum v. Potter*, 216 Va. 463, 467 (1975) ("Correspondence between parties can result in a binding contract . . . .").  It simply argues that the emails do not constitute such in this case.

"[C]ompleteness" means simply that "the contract embraces all the material terms." *Id.* (quoting *Smith*, 199 Va. at 127-28).

Succinctly stated, "[i]n order to be binding, an agreement must be definite and certain as to its terms and requirements; it must identify the subject matter and spell out the essential commitments and agreements with respect" to that arrangement. *Dodge v. Trs. of Randolph-Macon Woman's Coll.*, 276 Va. 1, 5 (2008) (quoting *Progressive Constr. Co. v. Thumm*, 209 Va. 24, 30-31 (1968)).

The series of emails that the parties exchanged in 2020 provided the terms of their expected transaction. Through these emails, the parties agreed that Total Quality Logistics would deliver nine truckloads of sod, three each day, starting July 20 and ending July 22, 2020. The parties agreed on the cost. In addition, they specified the pickup and delivery times, the pickup and delivery addresses, the types of trucks needed, and the amount and weight of the cargo. These terms were "sufficiently definite" for the trial court to give the agreement an "exact meaning." *See Dean*, 287 Va. at 537 (quoting *Smith*, 199 Va. at 127). *See generally* 1 *Williston on Contracts* § 4:21 (4th ed. 2007) (giving examples of "[a] lack of definiteness in an agreement").

We conclude that the contract's terms, created through the series of emails, were complete. The fact that the parties neglected to include a provision about the product's perishability did not render it invalid. *See, e.g.*, *Dean*, 287 Va. at 538 (explaining that not all ambiguity renders a contract incomplete).

CONCLUSION

Reviewing the record in the light most favorable to Riverside Turf, we hold that the trial court did not err in ruling that Total Quality Logistics failed to prove that Riverside Turf was bound by the 2012 contract signed by Riverside Farm. Therefore, the venue provision in the 2012 terms and conditions did not control, and the trial court had proper venue. The emails the parties

exchanged in 2020 formed the entire contract between Total Quality Logistics and Riverside Turf. The parties formed a valid contract despite not including any provision about the perishability of the sod. For these reasons, we affirm the judgment of the trial court.

*Affirmed.*