UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Beales, Ortiz and Causey


RICHARD HOWARD COX

v.      Record No. 0060-22-3

CARROLL COUNTY DEPARTMENT
 OF SOCIAL SERVICES

SONYA JANE COX

v.      Record No. 0067-22-3

CARROLL COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
FEBRUARY 7, 2023


FROM THE CIRCUIT COURT OF CARROLL COUNTY
Brett L. Geisler, Judge

(R. Christopher Munique; Lacy, Campbell & Munique, PC, on
brief), for appellant Richard Howard Cox.  Appellant submitting on
brief.

(Elizabeth Rakes, on brief), for appellant Sonya Jane Cox.
Appellant submitting on brief.

(Michael R. Bedsaul; Mary Foil Russell; Karen Loftin, Guardian *ad
litem* for the minor child; Sands Anderson, PC; Loftin & Osborne, on
brief), for appellee.  Appellee and Guardian *ad litem* submitting on
brief.


Richard Cox and Sonya Cox (collectively, "the grandparents") appeal the circuit court's

child protective, adjudicatory, and dispositional orders.  They argue that the circuit court erred in

entering a child protective order and in finding that the evidence was sufficient to prove that the

child was abused or neglected.  Upon reviewing the record and briefs of the parties, we conclude

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

that the Circuit Court of Carroll County did not err.  Therefore, we affirm the circuit court's judgment.

BACKGROUND[1]

"Because the appellee, [the Department], prevailed at trial, we must view the evidence and all reasonable inferences in the light most favorable to it."  *Lowe v. Dep't of Pub. Welfare of City of Richmond*, 231 Va. 277, 279 (1986).

In 2020, the child, who was four years old and diagnosed with autism, was living with the grandparents and his biological mother, Holli Cox ("mother").[2]  In January 2020, the child left the home unnoticed and was found on Route 58, a four-lane highway in front of their home.  Consequently, the Carroll County Department of Social Services ("the Department") became involved with the family, and the grandparents installed deadbolt locks on the doors "to prevent [the child] from leaving the home again unsupervised."

The child was again found wandering on Route 58.  Dr. Frank Falbo testified that on the evening of August 13, 2020, he was driving home and saw a young child run across Route 58.  Dr. Falbo stopped the car to check on the child, who appeared to be "about four to eight years old."  Dr. Falbo noticed that the child was not wearing shoes and seemed to have "some sort of developmental delay."  Dr. Falbo saw a house with a light on nearby and carried the child toward the house.  As they approached the house, a van "pulled up to the home," and a man exited the

---

[1] The record in these cases was sealed.  Nevertheless, we find it necessary to unseal relevant portions of the record to resolve the issues the grandparents have raised.  Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion.  Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed."  *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] Mother had suffered a traumatic brain injury after a car accident and was unable to care for the child on her own.  Mother and Sonya Cox ("Sonya"), the child's grandmother, had joint custody of the child.

van.  The child appeared to recognize the man, and the man seemed "surprised and distraught that the child was on the roadway."  The man told Dr. Falbo that he "had gone to get cigarettes at Dollar General."  Because the child appeared to recognize the man "as a family member," Dr. Falbo left the child with him.

Dr. Falbo did not ask for the man's name, but he reported the incident to the Carroll County Sheriff's Office.  That same evening, Dr. Falbo met with the police and showed them the home where he dropped off the child.  The police went to the house and could hear a television inside the home, but no one answered the door.  The police reported the incident to the Department.

The Department subsequently met with the grandparents and mother, who agreed to a safety plan because this was the second report of the child wandering on Route 58 unsupervised.[3]  The safety plan provided that the child would live with Tracy and Jennifer Cox, the child's great uncle and great aunt.  The safety plan also provided that the grandparents and mother could have supervised visitation with the child.  The Department also was concerned about the condition of the home so the safety plan directed the grandparents to "clean the residence."[4]  The parties agreed that the safety plan would remain in effect until September 30, 2020, when it could be "extended, revised, or dissolved."

The Department implemented a second safety plan dated October 27, 2020.  The second safety plan related to the earlier incidents and stated that the child would remain with his great uncle and great aunt, Tracy and Jennifer Cox.  The second safety plan again permitted supervised visitation between the child and the grandparents and directed the grandparents to cooperate with

---

[3] The safety plan noted that Richard Cox ("Richard") had denied that the incident occurred.

[4] According to the Department, the grandparents "cleaned up the home so it was in better condition."

the Department and all recommended services, including participating in therapy "to improve parenting of [the child]." The Department signed the second safety plan, but the grandparents refused to sign the plan.

On December 20, 2020, the grandparents picked up the child from Tracy Cox and brought him back to their house for the holidays. The grandparents informed the Department that their attorney had advised them that "Sonya's custody order took priority over the Safety Plan that had been implemented by the Department." The Department told the grandparents that the safety plan had "to be followed and, if they refused to return [the child], the Department would seek court action against them." On December 21, 2020, the Department filed a petition seeking a protective order.

On December 22, 2020, the Carroll County Juvenile and Domestic Relations District Court ("the JDR court") entered an *ex parte* preliminary child protective order against the grandparents. On December 30, 2020, the JDR court held a hearing and entered another preliminary child protective order against the grandparents. The JDR court ordered that the child "reside with Jennifer and Tracy Cox until further notice of the court" and permitted supervised visitation between the child and the grandparents. The JDR court further ordered the grandparents to cooperate and participate in all recommended services. The JDR court scheduled a review hearing for February 25, 2021.

At the review hearing, the JDR court adjudicated that the child was abused or neglected and transferred custody of the child to the Department. The JDR court also entered a child protective order and a dispositional order. The JDR court ordered that the child remain in the care of Tracy and Jennifer Cox and that visitation with the grandparents was at the Department's discretion. The grandparents appealed to the circuit court.

- 4 -

On August 26, 2021, the parties appeared before the circuit court. The Department presented its evidence of the January and August 2020 incidents and that the grandparents had picked up the child without permission in December 2020. After the Department presented its evidence, Richard moved to strike; the trial court denied Richard's motion.

Richard then testified that he "did not believe that [the child] escaped from his home and was found alone on Route 58 by Falbo on August 13, 2020." He also denied seeing Dr. Falbo on that date. Richard explained that when he left to go to the store, the child was asleep on the couch and was still there when he returned from his errand. Richard catalogued the safety precautions that he and Sonya had taken, including installing deadbolt locks, security cameras, alarms, and signs, to ensure that the child would "not be able to get out of the house unsupervised." Richard thought that the first safety plan had expired on September 30, 2020, and he denied receiving notice of a second safety plan. He also denied ever refusing to sign a safety plan. Richard testified that he and Sonya had tried to contact the Department about bringing the child home. When they received no response from the Department, "they consulted with an attorney and followed his advice to go and pick [the child] up" from Tracy and Jennifer Cox.

The January 2020 incident was "very scary" to Sonya because she did not know that the child could open doors. After that incident, she and Richard installed deadbolt locks on the doors. Sonya also thought the safety plan had expired on September 30, 2020. She claimed that she was following the attorney's advice when she and Richard picked up the child from Tracy Cox. Sonya further emphasized that for the two weeks that the child was with them during the holidays, he did not escape from their home.

At the conclusion of all the evidence, Richard renewed his motion to strike. Both Richard and Sonya argued that the Department had not met its burden of proof that the child was

- 5 -

abused or neglected and asked the circuit court to deny the Department's request for a protective order. The Department and the child's guardian *ad litem* advocated for the entry of the protective order and a finding that the child was neglected. After hearing all the evidence and argument, the circuit court found that the child wandered off from the home in January 2020 and was seen along Route 58, a four-lane highway near his home, and that he also left his home and was found "running out on Route 58 on August 13, 2020." The trial court found Dr. Falbo's testimony "very compelling" and found it "extremely unlikely that two different four-year old children were running out on Route 58 on August 13, 2020." The circuit court did not believe Richard and Sonya's testimony of the events on August 13, 2020, and the circuit court held that the child was an abused or neglected child and granted the Department's petition for a protective order against the grandparents. On December 15, 2021, the circuit court entered the child protective, adjudicatory, and dispositional orders. These appeals followed.

## ANALYSIS

On appeal, the grandparents argue that the circuit court erred in entering the child protective order and by finding that the Department proved by a preponderance of the evidence that the child was abused or neglected.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (alteration in original) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Because the trial judge heard the evidence ore tenus and was able to judge the credibility of the witnesses, we must afford his decree the same weight as a jury verdict and uphold his findings unless they are plainly wrong or without evidence to support them." *Davis v. Holsten*, 270 Va. 389, 397-98 (2005).

Code § 16.1-228(1) defines an abused or neglected child as any child:

> [w]hose parents or other person responsible for his care creates or
> inflicts, threatens to create or inflict, or allows to be created or
> inflicted upon such child a physical or mental injury by other than
> accidental means, or creates a substantial risk of death,
> disfigurement or impairment of bodily or mental functions.

In addition, Code § 16.1-228(5) defines an abused or neglected child as any child "[w]ho is without parental care or guardianship caused by the unreasonable absence or the mental or physical incapacity of the child's parent, guardian, legal custodian, or other person standing in loco parentis." "[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child." *Jenkins v. Winchester Dep't of Soc. Servs.*, 12 Va. App. 1178, 1183 (1991). Proof by a preponderance of the evidence is the appropriate standard for abuse and neglect cases. *Cumbo v. Dickenson Cnty. Dep't of Soc. Servs.*, 62 Va. App. 124, 130 (2013).

The trial court found that the child had escaped from the grandparents' home unnoticed on *two separate occasions* within the last year. On both occasions, the child was found wandering alone on a four-lane highway. After the first incident, the grandparents knew that the child could open the doors and leave the home, yet the child was left unattended again in circumstances in which he was able to escape. The trial court rejected the grandparents' denial of the August incident; instead, it found that Dr. Falbo's account was "very compelling." Dr. Falbo testified that he saw a young child between the ages of four and eight, running across the highway, in the dark, without shoes. He also testified that he picked up the child and returned him to the home where the grandparents live, which the grandparents denied ever happened. However, the trial court found that it would be "extremely unlikely that two different four-year old children were running out on Route 58 on August 13, 2020." "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their

testimony, and has discretion to accept or reject any of the witness' testimony." *Street v. Street*, 25 Va. App. 380, 387 (1997) (*en banc*)). "This Court is bound by the credibility findings of the circuit court." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 339 (2013).

Consequently, credible evidence supports the finding that the child was "without parental care or guardianship caused by the unreasonable absence . . . of the child's . . . guardian" and was at "substantial risk" of physical injury or death when he was found wandering unattended—on two separate occasions—on a four-lane highway. *See* Code § 16.1-228(1), (5). Of particular concern was the grandparents' lack of supervision, especially considering the child's young age, his autism diagnosis, and his proclivity for wandering. "When the trial court acts as a factfinder, as it did in this case, it retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 421 (2012) (quoting *Farley v. Farley*, 9 Va. App. 326, 328 (1990)). Considering the totality of the evidence, the circuit court did not err in entering the child protective order against the grandparents and in finding that the child was abused or neglected.

CONCLUSION

For all of the foregoing reasons, we affirm the decision of the Circuit Court of Carroll County.

*Affirmed.*