COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Friedman and Lorish
Argued at Alexandria, Virginia


DAVID S. CHUNG

v.        Record No. 1665-23-4

LAW FIRM OF URBAN & FALK, PLLC

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
OCTOBER 29, 2024


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Virginia Whitner Hoptman (Seth James B. Obed; Redmon, Peyton &
Braswell LLP; Obed Law, PLLC, on briefs), for appellant.

Juli M. Porto (Aimee N. Solano; Thomas F. Urban, II; Blankingship
& Keith, P.C.; Fletcher, Heald & Hildreth, PLC, on brief), for
appellee.


David S. Chung ("Chung") appeals from the circuit court's order denying his amended

motion to dismiss/vacate and reconsider its ruling "on nullity."  He assigns three errors to the

circuit court's ruling, which culminated an effort by Urban & Falk, PLLC ("Urban & Falk") to

collect on an arbitration award in its favor.  Chung contends that the circuit court erred in: (1)

holding that Urban & Falk had standing to apply to the circuit court for confirmation and

modification of the arbitration award and that it had subject matter jurisdiction to rule on the

matter; (2) ruling that Urban & Falk's lack of standing was "cured" when it was reinstated as a

PLLC, following its previous cancellation by the State Corporation Commission ("SCC"); and

(3) ruling that Urban & Falk's "right of action" in this matter existed before the final arbitration

---

award was entered, the attorney fees requested by Urban & Falk were incurred, and before Urban & Falk's cancellation. Finding no error, we affirm the circuit court's ruling.

## I. BACKGROUND

"According to well settled principles, we recite the relevant facts in the light most favorable to [Urban & Falk], . . . the prevailing party in the circuit court." *Agnew v. United Leasing Corp.*, 80 Va. App. 612, 619 (2024) (second alteration in original) (quoting *Nichols Constr. Corp. v. Va. Mach. Tool Co., LLC*, 276 Va. 81, 84 (2008)).

This appeal arises from Chung's 2010 retention of Urban & Falk, a law firm organized as a professional limited liability corporation, or PLLC, to represent him in a lawsuit. Under the terms of Urban & Falk's retainer agreement, Chung was required to pay the law firm "20% of the gross amount of any settlement, verdict, or recovery of any kind obtained in [the] case," including in "post-trial proceedings related to [the] claim." Chung further "agree[d] to pay reasonable attorney's fees and all expenses related to enforcement of this [a]greement, however incurred[,] . . . whether or not through arbitration, litigation, or other processes." Urban & Falk subsequently obtained a verdict and judgment in Chung's favor in the amount of $100,000. The firm also successfully defended the judgment on appeal. *See Blaylock v. Chung*, 117 A.3d 1044 (D.C. 2015).

In October 2019, Urban & Falk contacted Chung in an attempt to collect monies it contended were owed under the retainer agreement. When this effort proved fruitless,[1] Urban &

---

[1] Chung maintained that because he had not collected any monies directly from the judgment debtor, but instead had entered into a settlement agreement based on an unjust enrichment claim against the judgment debtor's former tenant in common, the judgment "remain[ed] outstanding" and he owed the firm nothing. Urban & Falk insisted that the basis for the settlement agreement was the judgment it had obtained against the judgment debtor and that because Chung "had no other independent cause of action or claim against" the former tenant in common, monies he received from her would "satisf[y]" the judgment.

Falk elected to pursue the matter under the Uniform Arbitration Act, *see* Code §§ 8.01-581.01 to -581.016,[2] and the fee dispute resolution program of the Virginia State Bar.

Also relevant here, Urban & Falk's existence as a PLLC was cancelled by the SCC effective June 30, 2020, prior to arbitration. The cancellation occurred by operation of law after Urban & Falk failed to pay its annual registration fee to the SCC on March 31, 2020.

On June 29 and 30, 2021, the parties appeared for arbitration. Based on the terms of the retainer agreement and the facts before him, the arbitrator awarded Urban & Falk $20,000, plus interest in the amount of $3,600, with additional interest to accrue at a rate of 12% per annum until Urban & Falk received payment in full. Although the law firm had requested attorney fees for the costs incurred to enforce the retainer agreement, the arbitrator declined to make such an award, finding that to do so was "beyond the scope of [his] authority" under Rule 27B of the Bar's fee dispute resolution program.[3] The arbitrator entered an arbitration award reflecting these determinations on September 8, 2021.

On September 28, 2021, Urban & Falk filed an application for modification and confirmation of the arbitration award in the circuit court. *See* Code § 8.01-581.09 (providing that a court "shall confirm an award" upon "application of a party"); Code § 8.01-581.012 ("Upon granting an order confirming, modifying or correcting an award, a judgment or decree shall be

---

[2] The retainer agreement stipulated that "any controversy" between Chung and Urban & Falk that arose "in relation to [their] attorney-client relationship and the legal services rendered" by the law firm would be "submitted for resolution through bin[d]ing arbitration proceedings . . . governed by . . . Code § 8.01-581.01, et. seq." *See* Code § 8.01-581.01 (providing that "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable").

[3] Rule 27B provides that it is "the sole province of the circuit court" to determine "the entitlement to and amount of attorney's fees incurred in connection with the fee dispute arbitration." *See* Code § 8.01-581.012 ("Costs of the application [for arbitration] and of the proceedings subsequent thereto, and disbursements may be awarded by the court.").

entered in conformity therewith and be docketed and enforced as any other judgment or decree."). In addition to the monies awarded by the arbitrator, Urban & Falk requested $8,400 in attorney fees, plus interest, for its costs incurred to enforce the retainer agreement through arbitration, as well as any further attorney fees and interest incurred through post-arbitration enforcement.

Urban & Falk subsequently moved for partial summary judgment in the matter, and, following a hearing, the circuit court granted the motion. In its May 16, 2022 order on the motion, the circuit court confirmed the arbitration award, ruled that Urban & Falk was entitled to collect additional attorney fees and costs, and stated that it would determine the amount of those fees and costs in a subsequent trial.

The circuit court conducted a trial on September 21, 2022, and issued a letter opinion on October 12, 2022. In its letter opinion, the circuit court awarded Urban & Falk an additional $35,500 in attorney fees. The circuit court's total award to the law firm was $56,775.63, "plus applicable interest" until the judgment was paid. Urban & Falk initiated garnishment proceedings to collect on the judgment. Also relevant here, the firm's existence as a PLLC was reinstated on May 9, 2023, following Urban & Falk's successful application for reinstatement to the SCC.

On May 10, 2023, a third-party garnishee in the proceedings, Dupont Lawyer, LLC[4] ("Dupont"), filed a motion to dismiss the proceedings and to "vacate . . . all orders entered," alleging that Urban & Falk had lacked standing to initiate the proceedings. Noting that Urban & Falk's existence as a PLLC had been cancelled effective June 30, 2020, Dupont argued that the law firm "did not exist as a legal entity in the Commonwealth" when it filed its application for modification and confirmation of the arbitration award on September 28, 2021. Accordingly, because Urban & Falk had "lacked standing," Dupont contended that "as a matter of law, this proceeding is a legal nullity."

---

[4] Dupont employed Chung as an attorney, and he was one of its members.

- 4 -

Following a June 28, 2023 hearing, the circuit court denied Dupont's motion. It found that under Code §§ 13.1-1050.4 and -1050.5, Urban & Falk's "claim for attorney's fees existed before the cancellation," the law firm was "allow[ed] . . . to pursue its claim after its cancellation . . . that existed prior to the cancellation and then continued after reinstatement," and that its action to confirm and modify the arbitration award was "in furtherance of" that preexisting claim, thus resolving any standing issues.

On August 11, 2023, Chung filed an amended motion to dismiss/vacate and reconsider the circuit court's June 28, 2023 "ruling on nullity." Building upon Dupont's arguments, Chung contended that when Urban & Falk was reinstated as a PLLC, that "reinstatement did not cure [its] lack of standing on September 28, 2021, nor the entity's lack of standing" when the circuit court entered its judgment order confirming the arbitration award. Accordingly, Chung argued, because Urban & Falk's "reinstatement ha[d] no legal effect on the . . . [o]rder," the action it brought was "a nullity."

Without hearing argument on the matter, the circuit court entered a September 20, 2023 order denying the motion. The court found there was "no basis for reconsideration of the [c]ourt's prior ruling finding that the underlying judgment was not a nullity."

Chung noted his objections and appealed to this Court.

## II. ANALYSIS

Across his assignments of error, Chung sustains an argument that Urban & Falk lacked standing in the circuit court because its existence as a PLLC was cancelled on June 30, 2020, and the PLLC was in cancellation status before: (a) the arbitration was conducted and the arbitration award issued; (b) the application for modification and confirmation of the award was filed; and (c) the attorney fees requested of the circuit court were incurred. He further contends that the circuit court erred in holding that Urban & Falk's reinstatement "cured" its lack of standing and that "this

entire proceeding is void ab initio," and any action taken by the circuit court "is a legal nullity." We disagree.

On appellate review, "[t]he judgment of a circuit court will be set aside only if 'it appears from the evidence that such judgment is plainly wrong or without evidence to support it.'" *Callison v. Glick*, 297 Va. 275, 287 (2019) (quoting Code § 8.01-680). "We defer to the circuit court's factual findings and view the facts in the light most favorable to . . . the prevailing party below, but we review *de novo* the court's application of the law to those facts." *Koons v. Crane*, 72 Va. App. 720, 732 (2021). "Questions of standing are questions of law that we review de novo." *Watson v. Commonwealth*, 297 Va. 347, 350 (2019). Likewise, we review de novo issues of statutory interpretation and a circuit court's application of statutes to its factual findings. *Hawkins v. Town of South Hill*, 301 Va. 416, 424 (2022).

As a PLLC, Urban & Falk is governed by the Virginia Professional Limited Liability Company Act, Code §§ 13.1-1100 to -1123. *See* Code § 13.1-1102 (defining a PLLC as an LLC "organized . . . for the sole and specific purpose of rendering professional service[s]"). Because PLLCs are a species of LLC, the Virginia Limited Liability Company Act ("the Act"), Code §§ 13.1-1000 to -1099.27, "shall be applicable to [PLLCs]."[5] Code § 13.1-1122. Relevant here, Code § 13.1-1050.2(A) of the Act provides that when an LLC fails to timely pay its annual registration fee to the SCC, "the existence of the [LLC] shall be automatically canceled as of that day." However, under Code § 13.1-1050.4(A), certain LLCs that have "ceased to exist" may seek "reinstatement within five years thereafter."[6] Subsequently, a reinstated LLC's existence

___

[5] Code § 13.1-1122 further provides that where a conflict arises between the provisions of the Act and the provisions of the Virginia Professional Limited Liability Company Act, the latter statutory regime controls. But no party argues, and we do not find, that any such conflicts are present in the instant case.

[6] Code § 13.1-1050.4(A) also provides that the reinstatement mechanism does not apply to certain LLCs, but those statutory exclusions do not apply here. *See* Code § 13.1-1050.4(A)

- 6 -

"shall be deemed to have continued from the date of the cancellation as if cancellation had never occurred, and any liability incurred by the [LLC] or a member, manager, or other agent after the cancellation and before the reinstatement is determined as if cancellation . . . had never occurred." Code § 13.1-1050.4(C). And Code § 13.1-1050.5 provides that

> [t]he cancellation of existence of a[n] [LLC] shall not take away or impair any remedy available to or against the [LLC] or its members or managers for any right or claim existing, or any liability incurred, before the cancellation. Any action or proceeding by or against the [LLC] may be prosecuted or defended by the [LLC] in its name. The members or managers shall have power to take [LLC] action or other action as shall be appropriate to protect any remedy, right, or claim.

Here, Urban & Falk existed as a PLLC when Chung signed his retainer agreement in 2010. It also existed as a PLLC when, representing Chung, it won a judgment in his favor in 2013 and successfully defended that judgment on appeal. But by operation of Code § 13.1-1050.2(A), Urban & Falk's existence as a PLLC was automatically cancelled when it failed to timely pay its annual registration fee to the SCC on March 31, 2020. Pursuant to Code § 13.1-1050.4, Urban & Falk filed an application for reinstatement with the SCC within five years of cancellation, and on May 9, 2023, its existence as a PLLC was reinstated. But this reinstatement occurred after Urban & Falk, during its period of cancellation, engaged in arbitration with Chung in June 2021; received an arbitration award in September 2021; filed its application for modification and confirmation of the award in the circuit court in September 2021; and incurred the attorney fees and costs it requested of the circuit court. Thus, the question here is what effect, if any, Urban & Falk's cancelled status had on its ability to pursue its claims against Chung, and whether, as Chung alleges, the firm's reinstatement failed to "cure" a lack of standing that rendered proceedings "void" and the circuit court's actions "a legal nullity."

(excluding from the reinstatement mechanism LLCs that were cancelled pursuant to Code § 13.1-1050.3(A)(1) or judicially dissolved pursuant to Code § 13.1-1047).

In *Agnew*, a case decided after briefing in this matter was complete,[7] this Court had occasion to consider, as matters of first impression, the interpretation and operation of Code §§ 13.1-1050.4 and -1050.5. The appellants in *Agnew* argued that the circuit court erred when it confirmed the forced sale of their property to an LLC because the LLC's existence had been cancelled prior to the sale. *Agnew*, 80 Va. App. at 624. The LLC's cancelled status, the appellants contended, rendered the LLC's purchase of the property "void *ab initio*." *Id.* Although the LLC was subsequently reinstated pursuant to Code § 13.1-1050.4, the appellants maintained that the circuit court erred in interpreting and applying Code § 13.1-1050.5, and in its ultimate holding that the reinstatement rendered the sale valid. *Id.*

Our Court first considered whether the "temporary lapse" of the LLC's registration invalidated actions it took, through its agent, during the cancellation period. *Id.* at 627. Parsing Code § 13.1-1050.4, we held that "the plain language of the statute makes clear that it operates to retroactively effectuate and give full legal force to the post-cancellation actions of a[] [reinstated] LLC, its members, managers, or agents." *Id.* This was so because under the statute, as "long as a cancelled, qualifying LLC complies with the reinstatement requirements of Code § 13.1-1050.4[] . . . , the [SCC] 'shall enter an order of reinstatement of existence'; then, '[u]pon entry of the order,' the LLC's existence 'shall be deemed to have continued from the date of the cancellation as if cancellation had never occurred.'" *Id.* at 627-28 (last alteration in original) (quoting Code § 13.1-1050.4(C)). It was thus "clear" that because the LLC had been properly reinstated, its actions "during the cancellation period" were, by operation of statute, "rendered . . . as if they had occurred while the LLC was in existence." *Id.* at 629.

---

[7] On August 6, 2024, this Court emailed the parties and advised them to be prepared to address *Agnew* at oral argument. Both counsel who argued this matter acknowledged receipt of the Court's email that same day.

The Court then turned to the interpretation and application of Code § 13.1-1050.5 and the appellants' argument that under that statute, the cancellation of the LLC "completely took away and impaired all remedies available to [it] . . . for any right or claim that arose . . . *after* cancellation." *Id.* at 627 (first two alterations in original). Again relying on the statute's plain language, we first held that "it is facially clear that Code § 13.1-1050.5 is a remedies statute, which allows cancelled LLCs . . . to litigate suits concerning the LLC's rights, claims, or liabilities that predate its cancellation." *Id.* at 630. The Court then rejected the appellants' argument respecting post-cancellation rights and claims, holding that "[c]ontrary to [that] . . . argument, the 'plain meaning' of the statute does not exclude an LLC" from taking actions that cause additional rights or claims to arise "after cancellation." *Id.*

Applying *Agnew* to the facts and circumstances here, we conclude that Chung's arguments are unavailing. Urban & Falk's rights and claims against Chung arose years before the law firm's existence as a PLLC was cancelled, when it won and successfully defended a judgment for Chung that was subject to the payment terms of his retainer agreement. That agreement also specifically provided for the firm's remedies should it become necessary to enforce the agreement against Chung: the matter was to be submitted to arbitration, and Urban & Falk could also seek to collect the costs and attorney fees arising from enforcement. As *Agnew* makes clear, contrary to Chung's argument, the cancellation of Urban & Falk's existence as a PLLC had no legal effect whatsoever on what followed because the firm was later reinstated as a PLLC pursuant to Code § 13.1-1050.4. This reinstatement "operate[d] to retroactively effectuate and give full legal force to the post-cancellation actions of [the] [P]LLC," *id.* at 627, because by operation of the statute, Urban & Falk was "deemed to have continued from the date of the cancellation as if cancellation had never occurred," *id.* at 628 (quoting Code § 13.1-1050.4(C)). The firm's post-cancellation actions, therefore, including its participation in arbitration;

- 9 -

attainment of an arbitration award; application for modification and confirmation of the award; and incurment of further enforcement costs and fees, were all valid actions of Urban & Falk, PLLC, which had standing to take these actions. And *Agnew* makes clear that in pursuing a claim or right that arose prior its cancellation, Urban & Falk was pursuing pre-cancellation remedies that Code § 13.1-1050.5 had preserved for it.

Because Code §§ 13.1-1050.4 and -1050.5, taken together, rendered valid Urban & Falk's actions in this matter during its cancellation period, we hold that the circuit court did not err as Chung alleges. The court correctly denied Chung's amended motion to dismiss/vacate and reconsider its June 28, 2023 ruling, which rejected the argument that cancellation left Urban & Falk without "standing" to seek action in the circuit court, and thereby rendered proceedings there "a legal nullity." Likewise, the circuit court did not err, as Chung alleges, in "ruling" that the firm's reinstatement "cured" a "lack of standing," or that the firm's "right of action . . . existed" prior to cancellation.[8]

---

[8] Chung also assigns error to the circuit court for "holding that it had subject matter jurisdiction" in this matter. In so doing, he appears to conflate subject matter jurisdiction with standing, although these are distinct legal concepts. "Subject matter jurisdiction 'refers to a court's power to adjudicate a class of cases or controversies.'" *Riddick v. Commonwealth*, 72 Va. App. 132, 141 (2020) (quoting *Cilwa v. Commonwealth*, 298 Va. 259, 266 (2019)). "Subject matter jurisdiction 'can only be acquired by virtue of the Constitution or of some statute.'" *Id.* (quoting *Pure Presbyterian Church of Wash. v. Grace of God Presbyterian Church*, 296 Va. 42, 49 (2018)). We reject Chung's jurisdictional argument because subject matter jurisdiction in this case was conferred on the circuit court by statute. *See* Code §§ 8.01-581.09 to -581.014 (providing for trial court adjudication of arbitration awards under the Uniform Arbitration Act, Code §§ 8.01-581.01 to -581.016).

Chung also argues that because Urban & Falk "lacked standing to initiate this proceeding when it was filed [in the circuit court], this entire proceeding is void ab initio, and any order or other action taken [by the court] in the proceeding is a legal nullity." We reject this argument as well, because our holding affirming the circuit court's ruling necessarily renders moot the contention that Urban & Falk's alleged lack of "standing" rendered void the circuit court's actions.

<u>Attorney Fees and Costs on Appeal</u>

Urban & Falk requests an award of attorney fees and costs incurred in this appeal.

"Under the 'American Rule' applied in Virginia, prevailing litigants generally cannot recover their attorney fees unless permitted by statute, contract, or some other recognized exception." *Worsham v. Worsham*, 74 Va. App. 151, 178 (2022); *see also* Rule 5A:30(b)(2)(A) (permitting a party that has a "contractual . . . basis to request attorney fees" to "request an award of attorney fees incurred in the appeal of the case by making the request in . . . [their] brief"). Where an agreement "contains a provision awarding attorney's fees, the court must follow the terms of that agreement, to the extent allowable by law." *Jones v. Gates*, 68 Va. App. 100, 106 (2017); *see also* Rule 5A:30(b)(2)(B) (allowing us to consider the relevant "terms of a contract or stipulation between the parties" to determine whether to award fees). "Whether a contract entitles the prevailing party to attorney fees is a question of law that we review 'de novo.'" *Worsham*, 74 Va. App. at 178 (quoting *Online Res. Corp. v. Lawlor*, 285 Va. 40, 61 (2013)).

As noted *supra*, Chung's retainer agreement with Urban & Falk expressly provided that he agreed to pay "reasonable attorney's fees and all expenses related to enforcement" of the agreement, "however incurred . . . whether or not through arbitration, litigation, or other processes." Accordingly, we hold that Urban & Falk is contractually entitled to recover its reasonable attorney fees and costs incurred in this appeal and remand to the circuit court for a determination of the amount of those fees and costs. *See* Rule 5A:30(b)(2)(B) (providing that upon receipt of a request under Rule 5A:30(b)(2)(A), we may "remand the issue [of fees and costs] for determination" by the circuit court).

## III.  CONCLUSION

For the foregoing reasons, we affirm the rulings of the circuit court, and remand to the circuit court for a determination of the reasonable attorney fees and costs incurred by Urban & Falk in this appeal.

*Affirmed and remanded.*